(82 Misc. Rep. 525.)

PEOPLE ex rel. RAYMOND v. WARDEN OF CITY PRISON.

(Supreme Court, Special Term, New York County. November 7, 1913.)

1. DISORDERLY HOUSE (§ 6*)—KEEPING—LIABILITY OF OWNER OR AGENT.

Penal Law (Consol. Laws 1909, c. 40) § 1146, provides that whoever, as owner, agent, or lessor, shall agree to lease any building or part thereof, knowing or with good reason to know that it is intended to be used for immoral purposes, or whoever, as owner, agent, or lessor, permits a house or any part of a building of which he may be the owner, agent, or lessor to be so used, shall be guilty of a misdemeanor. *Held*, that where relator was sought to be charged with violation of such act, but the record failed to disclose that he was either the owner or agent of the premises complained of, it was insufficient to justify his being held for trial.

[Ed. Note.—For other cases, see Disorderly House, Cent. Dig. §§ 6, 9–13; Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONSTITUTIONAL LAW (§ 266*)—DISORDERLY HOUSE (§ 6*)—DUE PROCESS—
ABATEMENT OF DISORDERLY HOUSE.

Penal Law (Consol. Laws 1909, c. 40) § 1146, provides that whoever, as owner, agent, or lessor, agrees to lease any building or part thereof, knowing that it is intended to use the same for immoral purposes, or whoever, as owner, agent, or lessor, knowingly or with good reason to know, permits a house or any part of a building of which he may be the owner, agent, or lessor to be so used, shall be guilty of a misdemeanor. Tenement House Act (Consol. Laws 1909, c. 61) § 153, as amended by Laws 1913, c. 598, provides that a tenement house shall be deemed to have been used for immoral purposes with the permission of the owner if there shall have been two or more convictions from the same tenement house within six months, either for violation of section 150 of the chapter, relating to disorderly houses, or of Penal Law, § 1146. *Held*, that such provision, attempting to make two convictions from the same house conclusive evidence of knowledge on the part of the owner, agent, or lessor for the purpose of sustaining a conviction against him for violating section 1146, was unconstitutional, as depriving him of the right to a fair trial, and as amounting to a confiscation of his property.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 756; Dec. Dig. § 266;* Disorderly House, Cent. Dig. §§ 6, 9–13; Dec. Dig. § 6.*]

Habeas corpus by the People, on the relation of Max Raymond, against the Warden of the City Prison, to secure relator's discharge from imprisonment for alleged violation of Penal Law, § 1146, prohibiting the maintenance of disorderly houses. Writ sustained, and relator discharged.

Nathan Burkan, of New York City, for relator.

Charles S. Whitman, Dist. Atty., Stanley L. Richter, Deputy Asst. Dist. Atty., Archibald R. Watson, Corp. Counsel, and John P. O'Brien, Asst. Corp. Counsel, all of New York City, for respondent.

NEWBURGER, J. Relator was held by a city magistrate for trial in the Court of Special Sessions, as the minutes show, for a violation of subdivisions 1 and 2 of section 153 of the Tenement House Act. Chapter 598 of the Laws of 1913, amending section 109 of chapter 99 of the Laws of 1909, entitled "An act in relation to tenement houses, constituting chapter sixty-one of the Consolidated Laws," provided as follows:

"Sec. 109. 2. No tenement house or any part thereof shall be used for the purpose of prostitution or assignation of any description."

"Sec. 4. Section one hundred and fifty-three of such chapter is hereby amended to read as follows: 'Sec. 153. Permission of Owner.—A tenement house shall be deemed to have been used for the purpose specified in the last two sections with the permission of the owner, agent and lessee thereof in the following cases: 1. If summary proceedings for the removal of the tenants of said tenement house, or of so much thereof as is unlawfully used, shall not have been commenced within five days after notice of such unlawful use, served by the department charged with the enforcement of this chapter in the manner prescribed by law for the service of notices and orders in relation to tenement houses; or having been commenced are not in good faith diligently prosecuted to final determination. 2. If there be two or more convictions in the same tenement house within a period of six months either under section one hundred and fifty of this chapter or under section eleven hundred and forty-six of the Penal Law.'"

A careful reading of the Consolidation Act having reference to prostitution in tenement houses discloses that all the provisions seeking to punish landlords or agents of such property provide for a civil remedy, with the exception of section 1146 of the Penal Law (Consol. Laws 1909, c. 40), as amended by Laws 1910, c. 619, and Laws 1913, c. 591, in effect May 17, 1913, which reads:

"Whosoever shall keep or maintain a house of ill-fame or assignation of any description or a place for the encouragement or practice by persons of lewdness, fornication, unlawful sexual intercourse or for any other indecent or disorderly act or obscene purpose therein, or any place of public resort at which the decency, peace or comfort of a neighborhood is disturbed, shall be guilty of a misdemeanor. When the lessee, proprietor or keeper of a disorderly house or other building or any other person is convicted under this section, the lease or contract for letting the premises or the part thereof in which such violation occurred shall, at the option of the owner, agent or lessor, become void and the owner, agent or lessor may have the like remedy to recover the possession as against a tenant holding over after the expiration of his term. Whosoever as owner, agent or lessor shall agree to lease or rent or contract for letting any building or part thereof knowing, or with good reason to know, that it is intended to be used for any of the uses or purposes herein prohibited or whosoever as owner, agent or lessor knowingly or with good reason to know permits any house or room or other part of any building or premises of which he may be the owner, agent or lessor to be used in whole or in part for any of the uses or purposes herein prohibited, shall be guilty of a misdemeanor. Upon conviction of any person for a violation of the provisions of this section, the court before whom such conviction shall have been had, or the clerk of such court if there be a clerk, shall forthwith make and file in the office of the clerk of the county, in which said conviction shall have been had, a certified statement of said conviction and sentence, if any; and the clerk of said county shall immediately enter in the judgment docket book in said office the amount of the penalty or fine imposed, as a judgment against the person so convicted or sentenced. All persons convicted under this section in all places to which chapter six hundred and fifty-nine of the Laws of Nineteen Hundred and Ten applies shall be identified as provided for in section seventy-eight of that chapter."

[1] The record fails to disclose that the relator was either the owner or agent of the premises complained of. The magistrate, after taking proof that there had been several convictions of the tenants within six months, held the relator for trial. It is contended by the prosecution that under subdivision 2, there being two or more convictions in the same tenement house within a period of six months, the relator was guilty of violating section 1146 of the Penal Law. The learned corporation counsel, who is associated in the prosecution, in his brief contends that the relator violated the Tenement House Law because he was the owner of a tenement house in which prostitution was committed. This seems to have been the theory upon which this relator was held. To adopt such a ruling would, in my judgment, be a violation of the rights of the relator. The mere fact that tenants have violated the law cannot be construed to hold that the landlord is responsible. The act does not provide that it shall be prima facie evidence. As was said by Mr. Justice Peckham in People v. Cannon, 139 N. Y. 43, 34 N. E. 762, 36 Am. St. Rep. 668:

"It cannot be disputed that the courts of this and other states are committed to the general principle that even in criminal prosecutions the Legislature may with some limitations enact that when certain facts have been proved they

shall be prima facie evidence of the existence of the main fact in question. See cases cited in Board of Excise Com'rs of Auburn v. Merchant, 103 N. Y. 143, 8 N. E. 484, 57 Am. Rep. 705, supra. The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with, the main fact. The inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary, or wholly unreasonable, unnatural, or extraordinary, and the accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence and given such weight to the presumption as to it shall seem proper. A provision of this kind does not take away or impair the right of trial by jury. It does not in reality and finally change the burden of proof. The people must at all times sustain the burden of proving the guilt of the accused beyond a reasonable doubt."

And in Howard v. Moot, 64 N. Y. 268, it was held:

"The rules of evidence are not an exception to the doctrine that all rules and regulations affecting remedies are at all times subject to modification and control by the Legislature. The changes which are enacted from time to time may be made applicable to existing causes of action, as the law thus changed would only prescribe the rule for future controversies. It may be conceded, for all the purposes of this appeal, that a law that should make evidence conclusive which was not so necessarily in and of itself, and thus preclude the adverse party from showing the truth, would be void, as indirectly working a confiscation of property, or a destruction of vested rights."

In People ex rel. Nechamcus v. Warden, etc., 144 N. Y. 535, 39 N. E. 687, 27 L. R. A. 718, Mr. Justice Gray said:

"It seems to me that the constitutionality of this act is to be tested by its effect upon the citizen's right to pursue a lawful employment. If it imposes an arbitrary restriction, and if it has no reference to the welfare and health of the people, it must be condemned. I am not unwilling to concede that the act skirts pretty closely that border line, beyond which legislation ceases to be within the powers conferred by the people of the state, through the Constitution, upon its legislative body. When the Legislature passes an act which plainly transcends the limits of the police power of the state, it is the duty of the judiciary to pronounce its invalidity, and to nullify the legislative attempt to invade the citizen's rights. The court should never hesitate to interpose the barrier of its judgment against the operation of laws, which distinctly contravene constitutional rights."

[2] The act sought to be enforced is unconstitutional in that it deprives a defendant of a proper trial. It imposes unusual and unnecessary restrictions upon owners of realty. It sweeps away the right of a class of citizens who are entitled to the equal protection of the laws with all other persons. It invades the rights of liberty, because it arbitrarily and unnecessarily denies the right of a specified class of citizens to have their day in court. It provides that the guilt of tenants shall operate to convict the landlord without any evidence of knowledge or intent on the part of such landlord. It gives him no opportunity of showing that the tenants had violated the law without his knowledge, or of showing that he had used every means to keep the premises clean. In a community like ours, where we have apartments and tenements in which there are many tenants, unless the owner or lessee is given an opportunity to show by proper evidence that he had used every means to rid the premises of prostitutes and undesirable tenants, he would, in effect, be deprived of his constitutional rights to a fair trial, and a convic-

tion under such a law might result in a confiscation of his property. This may not be a literal taking of property without due process of law, but it is an annihilation of its value and a destruction of its attributes, so that, while the owner is permitted to retain his property in name, he is deprived of its essence and substance. Wynehamer v. People, 13 N. Y. 378–398; Wright v. Hart, 182 N. Y. 335, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263.

Therefore the relator is entitled to his discharge for the reasons: (1) That there was no evidence before the magistrate to show that he was the owner or lessee of the premises complained of. (2) That the amendment to the Tenement House Act, known as chapter 598 of the Laws of 1913, is unconstitutional.

Writ sustained, and relator discharged.