(85 Misc. Rep. 429)

TENEMENT HOUSE DEPARTMENT OF CITY OF NEW YORK v. McDEVITT.

(Supreme Court, Appellate Term, First Department.   May 29, 1914.)

DISORDERLY HOUSE (§ 10*) — POLICE POWER AND REGULATIONS — TENEMENT HOUSE ACT—CONSTUCTION.

    Tenement House Law (Consol. Laws, c. 61) § 109, as amended by Laws 1913, c. 598, provides that no tenement house shall be used for the purpose of prostitution, and section 124, prescribing the penalty, declares that the owner of any such house where any violation exists shall for

each violation be subject to a civil penalty of $50. *Held,* that such owner is not subject to the penalty in the absence of knowledge or notice actual or implied merely because one or more acts of prostitution have been committed by a tenant, since, as he could not prevent such acts, it would amount to confiscation of such property, and, as it would punish him for no wrong, it would render the act unreasonable and unconstitutional.

[Ed. Note.—For other cases, see Disorderly House, Cent. Dig. § 35: Dec. Dig. § 10.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by the Tenement House Department of the City of New York against Lucy A. McDevitt. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued May term, 1914, before GUY, BIJUR, and PENDLETON, JJ.

Frank L. Polk, Corp. Counsel, of New York City (John P. O'Brien, of New York City, and E. E. V. Dunn, of counsel), for appellant.

George B. Holbert, of New York City, for respondent.

BIJUR, J. This action was begun against defendant, owner of certain premises, to recover the penalty of $50, as the summons recites it, "for permitting the tenement house (described) to be used for the purpose of prostitution and assignation in violation of section 109 of the Tenement House Law." It was conceded that two women, one occupying an apartment on the second floor, and one an apartment on the first-floor, had used the same for purposes of prostitution and had been arrested and found guilty. Defendant was allowed to testify that she had no knowledge of the unlawful use of the apartments affected, and that nothing had occurred to even suggest a suspicion on her part, prior to the arrest of the offenders. This testimony was admitted, although plaintiff objected that it was immaterial, irrelevant, and incompetent, because under the statute the mere occurrence of the offense on premises owned by the defendant, regardless of notice to, or knowledge by, her, justified the imposition of the penalty.

The only question presented by this appeal is whether the defendant can be held, in the absence of knowledge or notice actual or implied. There is no claim that any agent or servant of hers had knowledge or notice, so that cases which discuss the liability of a principal for the act or omission of an agent are quite irrelevant.

Section 109 of the Tenement House Law (Consol. Laws, c. 61), as amended by Laws 1913, c. 598, so far as material, reads:

"Sec. 109: * * * No tenement house or any part thereof * * * shall be used for the purpose of prostitution. * * * *"

And section 124 reads:

"Sec. 124: Penalties for violations. * * * The owner of any tenement house or part thereof * * * where any violation of this chapter * * * exists * * * shall * * * for each such violation * * * be subject to a civil penalty of $50."

The enactment, so far as it regulates generally the use and construction of tenement houses, is conceded to be a valid exercise of the

police powers of the state.  It must also be conceded that, for the violation of any act validly prohibited by the state, the state may impose an appropriate monetary penalty upon the person guilty of performance of the act or upon one who permits it to be performed or continued.  It seems to me, however, to be evident that, in order to charge a person with responsibility for the mere commission of an act by another person (not his agent), it must be within reasonable human possibility that he can prevent the same.  I am of opinion that a landlord of a tenement house cannot lawfully be held responsible merely because one or more acts of prostitution have been committed by a tenant or other person on the premises.  It is evident that he could not prevent such acts without having an agent constantly present with every single person in the house.  A requirement so oppressive would place a burden upon the ownership of this class of property equivalent to substantial confiscation, and therefore be beyond the power of the state to impose.

"It cannot be claimed that it would have the right, even under the exercise of the police power, to command the doing of some act by the owner of property and for the purpose of carrying out some provision of law, which act could only be performed by the expenditure of a large and unreasonable amount of money on the part of the owner.  If such excessive demand were made, the act would without doubt violate the constitutional rights of the individual.  The exaction must not alone be reasonable when compared with the amount of the work or the character of the improvement demanded.  The improvement or work must in itself be a reasonable, proper, and fair exaction when considered with reference to the object to be attained."  Opinion by Peckham, J., in Health Dept. v. Director of Trinity Church, 145 N. Y. 32, 41, 39 N. E. 833, 836 (27 L. R. A. 710, 45 Am. St. Rep. 579).

See, also, Tenement House Dept. v. Moeschen, 179 N. Y. 325, 333, 334, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910, 1 Ann. Cas. 439, affirmed 203 U. S. 583, 27 Sup. Ct. 781, 51 L. Ed. 328.

Again, since the landlord cannot prevent such acts, to charge him with a penalty for their occurrence would be to punish him where he has omitted no legal duty and committed no wrong.  From that standpoint the act would be unconstitutional, as determined in Ives v. So. Buffalo Ry. Co., 201 N. Y. 271, 296, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156.  It would also fail to meet the test prescribed in State of Washington v. Clausen, 65 Wash. 156, 177, 195, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, which declined to follow the Ives Case and interpreted the Workingmen's Compensation Law as constitutional.  The Supreme Court of Washington, as I read the decision, conceded that the compensation law incidentally deprived certain employers of their property without fault or perhaps took the property of one person to pay the obligations of another, but held that that in itself was not a fatal defect because the act directly promoted the public welfare by compensating employés for what might well be regarded as more or less unavoidable accidents.  The provision in the law which we are discussing would, if interpreted as appellant claims, as I have shown above, neither prevent the commission of the offenses against which it is aimed, nor compensate any one for such injury as might result from their commission.

The case of Berlholf v. O'Reilly, 74 N. Y. 509, 30 Am. Rep. 323,

marks perhaps the extreme limit to which our courts have gone in cases involving a question analogous to the one at bar. There it was held that a landlord might lawfully be made liable for a penalty, or compensation to be recovered by the injured person, to whom liquor had been sold causing intoxication and consequent injury. But the act, there construed, being the one commonly known as the Civil Damage Act of April 29, 1873, limits liability to a landlord who has rented his premises with knowledge that intoxicating liquors are to be sold thereon. The court said significantly at page 525 of 74 N. Y. (30 Am. Rep. 323):

"The liability imposed upon the landlord for the acts of the tenant is not a new principle in legislation. His liability only arises when he has consented that the premises may be used as a place for the sale of liquors."

From what has been said, it follows that if the statute required from the landlord, or other person in control of the premises, either an appropriate degree of vigilance to prevent the commission of the offense, or if we construe it to require him to effect an abatement of the offense when he had knowledge thereof or where the circumstances were sufficient to charge him with knowledge, it would manifestly be valid.

The learned corporation counsel urges that the evil sought to be cured is so great and the difficulty of reaching it so marked that it cannot be stopped unless in the arbitrary manner which he claims is imposed by the law in question. If, however, as I have pointed out, the means adopted for cure are unlawful, this argument has no validity, from the standpoint of the law; and I may add that, from the point of view of practical utility, it is difficult to see how an abuse can be prevented by imposing for its mere occurrence a penalty upon a person who has no power to prevent it. I conclude therefore that the construction of the act contended for by the learned corporation counsel would render it unreasonable and unconstitutional, and it is elementary that it should not be so construed, if another construction be possible within its terms.

Consequently the evidence offered by the defendant proving that she had no knowledge of the offenses complained of and that nothing had occurred to charge her with such knowledge was competent and relevant.

While I do not base my opinion on other provisions of the act, nevertheless section 154, as amended by Laws 1913, c. 598, which provides that:

"In an action * * * for a violation of any of the provisions of this chapter, relating to prostitution, * * * proof of the ill repute or the common fame of the premises * * * or of the inmates thereof, or of those resorting thereto shall constitute presumptive evidence and it shall be presumed that such use was with the permission of the owner, agent and lessee"—

lends color to the notion that the Legislature had in mind that the owner should not be chargeable generally under the act without knowledge or notice.

The judgment, in my opinion, is therefore right and should be affirmed. All concur.