TENEMENT HOUSE DEPARTMENT OF CITY OF NEW YORK v. Mc-
DEVITT.   (No. 6442.)

(Supreme Court, Appellate Division, First Department.   December 4, 1914.)

DISORDERLY HOUSE (§ 10*)—PENALTIES—STATUTORY PROVISIONS—"VAGRANT."
    Tenement House Law (Consol. Laws, c. 61) § 124, provides that the
    owner of any tenement house, where any violation of that law exists,
    shall be subject to a civil penalty of $50.   Section 109, as amended by
    Laws 1913, c. 598, provides that no tenement house shall be used for the
    purpose of prostitution or assignation.   Chapter 598 also amends sec-
    tion 150 to provide that a person soliciting another to enter a house of
    prostitution or a room in a tenement house for purposes of prostitution,
    etc., shall be deemed a vagrant, section 153 so as to provide that a tene-
    ment house shall be deemed to have been used for purposes of prostitu-
    tion with the consent of the owner, where summary proceedings to re-
    move the tenants of so much of the house as is unlawfully used are not
    commenced within five days after notice of the unlawful use, and where
    there are two convictions within six months, and section 154 to provide
    that proof of ill repute and common fame shall constitute presumptive
    evidence, and that it shall be presumed that the unlawful use was with
    the permission of the owner.   *Held* that, construing section 124 in con-
    nection with all the amendments made in 1913, the owner of a tenement
    house used for purposes of prostitution without his permission or knowl-
    edge is not liable for the penalty, especially in view of the doubtful con-
    stitutionality of the act if not so construed.
        [Ed. Note.—For other cases, see Disorderly House, Cent. Dig. § 35;
    Dec. Dig. § 10.*
        For other definitions, see Words and Phrases, First and Second Series,
    Vagrancy.]

        McLaughlin and Dowling, JJ., dissenting.

    Appeal from Appellate Term, First Department.
    Action by the Tenement House Department of the City of New
York against Lucy A. McDevitt.   From a determination of the Appel-
late Term (85 Misc. Rep. 429, 147 N. Y. Supp. 941) affirming a judg-
ment in favor of defendant dismissing the complaint in the Municipal
Court, plaintiff appeals.   Affirmed.
    See, also, 148 N. Y. Supp. 1146.
    Argued   before   INGRAHAM,   P.   J.,   and   McLAUGHLIN,
CLARKE, DOWLING, and HOTCHKISS, JJ.

    Frank L. Polk, Corp. Counsel, of New York City (John P. O'Brien
and F. E. V. Dunn, both of New York City, of counsel), for appel-
lant.
    George B. Holbert, of New York City (Herman Ackerman, of
Brooklyn, on the brief), for respondent.

    INGRAHAM, P. J.   The defendant is the owner of a tenement house
located at No. 326 West Forty-Third street in the city of New York,
and this action was brought to recover a penalty prescribed by sections
109 and 124 of the Tenement House Act (chapter 99 of the Laws of
1909, as amended by chapter 598, Laws 1913).   The pleadings were
oral.   The plaintiff complained of the defendant for a violation of
sections 109 and 124 of the Tenement House Law, and the defendant

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

answered by a general denial. The plaintiff introduced in evidence a stipulation made by the parties to the action that the building was a tenement house and was owned by the defendant; that on July 23, 1913, one Mamie Brown, occupying apartments on the second floor rear thereof, used the same for the purpose of prostitution, and was arrested and found guilty by a magistrate and sentenced to two months' imprisonment; that on July 23, 1913, one Rose Howard, occupying apartments on the first floor thereof, used the same for purposes of prostitution and was arrested, found guilty by a magistrate, and sentenced to one month's imprisonment. Having introduced this stipulation in evidence, the plaintiff rested, whereupon the defendant was called on her own behalf. She testified that she had owned this property for six years; that 22 families occupied the house, 4 families on each floor. She was then asked whether she at any time learned that any of the tenants had been accused of the improper use of the apartments, to which she answered, "No." This question was objected to as incompetent, immaterial, and irrelevant; that under the statute the witness should not be permitted to show the contrary. That objection was overruled. The defendant then testified that there were 22 families in the house, and that she never at any time knew of any violation of this statute; that on July 24, 1913, she received notice from the police department as to the conviction of two of her tenants, and as soon as she received the notice she cleaned the place out, ejecting both of these parties who had been convicted, and they were put out on July 25th; that her attention had never at any time been called to any violation of law in these apartments; that these tenants appeared to be husband and wife, and everybody in the apartment said they were nice, quiet people; that she never had any report from any of her employés or any one else about the conduct of these people, and no tenant ever made any complaint about them. The janitor of the tenement house was then called and testified that the apartments were perfectly respectable; that when she rented these apartments she made inquiries about them and was told that the Brown woman had a husband who was a waiter and the Howard woman had a husband who worked in the Hippodrome; that these were all the men she ever saw about these apartments, and she never heard any complaints; that during the 15 years that she had charge of these apartments no one else had ever been arrested from the building, and there was nothing to indicate that the tenants were not perfectly respectable and the property used by respectable people; that one of these tenants was in for less than a month when she was arrested, and the other was there for six months when she was arrested. Upon this testimony the court rendered judgment in favor of the defendant, and from that determination the plaintiff appealed to the Appellate Term, where the judgment was affirmed.

Section 109 of the Tenement House Law was amended by chapter 598 of the Laws of 1913. It prohibits the use of a tenement house for a lodging house or stable, for storage or handling rags, for the purpose of prostitution or assignation of any description, for the keeping of a horse, cow, calf, swine, sheep, or goat in a tenement house or on the same lot or premises thereof, except outside of the city limits,

when not more than two horses may be kept in each lot or premises, provided they are stabled at least 20 feet distant from any building used for living purposes. This prohibition was as to the use of the apartments in a tenement house, and on its face would apply to tenants rather than to the owners. A person owning and renting a tenement house to various tenants of course would be prohibited from renting the premises for any purpose here prohibited; but each tenant would also be prohibited from using an apartment in the house for either of the prohibited purposes. It was a general prohibition against use, but the section itself provides no penalty or method of enforcing the prohibition. Section 124, which was in the original act before the amendment, provides penalties for a violation of the act, and imposes such penalties upon the owner as well as upon the tenant. By the same act which amended section 109 (chapter 598 of the Laws of 1913), section 150 was also amended so as to provide that a person who solicits another to enter a house of prostitution or a room in a tenement house or any part thereof for purposes of prostitution, commits prostitution in a tenement house or any part thereof, or knowingly resides in a house of prostitution or assignation or ill fame of any description in a tenement house, or keeps or maintains a house of prostitution, assignation, or ill fame of any description in a tenement house, shall be deemed a vagrant, and upon conviction thereof shall be committed to the county jail for a term not exceeding six months. This act also amends section 153 by providing that a tenement house shall be deemed to have been used for the purpose specified in the last two sections with the permission of the owner, agent, and lessee thereof, if summary proceedings for the removal of the tenants of said tenement house, or so much thereof as is unlawfully used, shall not have been commenced within five days after notice of such unlawful use served by the department, or, having been commenced, are not in good faith diligently prosecuted to final determination, and if there be two or more evictions in the same tenement house within a period of six months either under section 150 of this chapter or under section 1146 of the Penal Law (Consol. Laws, c. 40), and section 154, which provides certain rules of evidence, provides that proof of ill repute or the common fame of the premises which are the subject-matter of the action or proceeding or of the inmates thereof or of those resorting thereto shall constitute presumptive evidence, and it shall be presumed that such use was with the permission of the owner, agent, and lessee. Thus sections 109, 150, 153, and 154 of this act were amended by the same chapter and at the same time, and I think these various amendments to the act must be read together to ascertain the intention of the Legislature in imposing these penalties for a violation of the act and providing for their enforcement. While it is quite true that in neither section 109 nor section 124 of the act is the imposition of the penalty made to depend upon the knowledge of the owner that the premises were used in violation of section 109, section 124 was in the act as originally passed, while section 109, prohibiting the use of a tenement house for the purpose of prostitution, was not then in the act, but was added by chapter 598 of the Laws of 1913. It seems to me that the fair construction of these two sections, read in connection with all

amendments made in 1913, would indicate that the Legislature did not intend to inflict a penalty upon the owner of a tenement house where the violation was without his knowledge or permission; that when section 153 was amended, by providing that certain facts would justify a presumption that such use was with the permission of the owner, and section 154 was amended, by providing that in an action or proceeding for a fine, penalty, or other punishment for a violation of the provisions of the chapter relating to prostitution, assignation, or other indecency, proof of ill repute or the common fame of the premises should constitute presumptive evidence that such use was with the permission of the owner, agent, or lessee, such amendment would also apply to section 109, and to justify the imposition of the penalty some evidence of the permission or knowledge of the owner would be required. I should have considerable doubt as to the constitutionality of this act, if a penalty was imposed upon the owner of a tenement house for acts which he could not in the nature of things know of or prevent. It would certainly be a question whether inflicting such a penalty without giving an owner an opportunity to rebut the presumption of permission or knowledge would be the due process of law which is required before a person's property shall be taken to satisfy a demand of either the state or an individual. Under the provisions of section 109 of the act, if any tenant at any time used any apartment for the purpose of "prostitution or assignation of any description," even though no one except the user of the apartment had knowledge of it, or could have prevented such, the owner would be liable for the penalty prescribed. The owner of a tenement house certainly cannot be in every apartment at all times of the day and night, and it seems to me it could not have been intended to impose such a penalty upon an owner who in the utmost good faith has used every precaution to see to it that his tenants are reputable people, and where he has no notice or knowledge of any kind that any apartment has been or was to be used for an immoral purpose. I think this law can be given its full effect by holding that sections 153 and 154 applied to a proceeding to recover a penalty for a violation of section 109, as well as to the other sections for which penalties are prescribed. Giving the act this construction would make it consistent with justice and remove any possibility of a question as to its constitutionality, and I think it is not in violation of its express provisions.

If these views are correct, it follows that the judgment of the Municipal Court was right, and the determination appealed from should be affirmed, with costs.

CLARKE and HOTCHKISS, JJ., concur.

McLAUGHLIN, J. I am unable to agree with a majority of the court that the judgment here appealed from should be affirmed. Section 109 of the Tenement House Law provides, among other things, that: ·

"No tenement house or any part thereof or the lot or premises thereof shall be used for the purpose of prostitution or assignation of any description."

The defendant admitted that her premises were used for that purpose on two different occasions. This made her liable to the penalty provided in section 124 of the same law. The liability, as I read the statute, does not depend upon knowledge.

It may be conceded that the statute is harsh and drastic, but that was a matter for the consideration of the Legislature when it was passed. The Tenement House Law was passed after a full report had been made to the Legislature by a Tenement House Commission appointed under chapter 279 of the Laws of 1900. A perusal of its report, of which the court can take judicial notice (Tenement House Department v. Moeschen, 179 N. Y. 325, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910, 1 Ann. Cas. 439), will show why the statute under consideration was passed. A recovery of the penalty under the statute does not depend upon proof of knowledge on the part of the owner of premises, but simply the use to which the premises were put; in other words, the owner of premises must see to it that the same are not used for the purposes of prostitution, and, if they are, then he at once becomes liable to pay the penalty prescribed, irrespective of his knowledge of that fact.

There are numerous instances where persons have been convicted of a criminal offense without proof of a criminal intent or even knowledge that the act was committed. People v. Werner, 174 N. Y. 132, 66 N. E. 667; People v. West, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452; People v. D'Antonio, 150 App. Div. 109, 134 N. Y. Supp. 657; Commonwealth v. Kelley, 140 Mass. 441, 5 N. E. 834; People v. Roby, 52 Mich. 577, 18 N. W. 365, 50 Am. Rep. 270.

I think the determination of the Appellate Term and the judgment of the Municipal Court should be reversed, and, as there is no dispute of fact, judgment should be ordered for the plaintiff for the amount of the penalty.

DOWLING, J., concurs.