[No. 13340.   Department One.   February 9, 1917.]

THE STATE OF WASHINGTON, *on the Relation of Alfred H.
Lundin, Respondent,* v. JESSE J. HUMPHREY *et al.,
Appellants.*[1]

PROSTITUTION—NUISANCES—ABATEMENT — ACTIONS — DEFENSES—
TEMPORARY CESSATION.   Under the "Red Light" law, Rem. Code,
§ 946-2, which provides for an action of abatement, "whenever a
nuisance exists," and Id., § 946-8, authorizing a fine against any
owner of a building used for prohibited purposes whenever a per-
manent injunction issues in such action, it is not a defense to the
action that the property was not being used for the purposes of
prostitution at the time the action of abatement was commenced nor
since, where it appears that the owners knew it was being so used
and made no effort to abate the nuisance after arrests had been
made, nor until after the commencement of the abatement action;
a temporary cessation of unlawful practices not being sufficient
where it is presumable that they would have been continued but for
the abatement action.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered August 11, 1915, in favor of
the plaintiff, in an action to abate a nuisance, tried to the
court.   Affirmed.

*Peterson & Macbride,* for appellants.
*Alfred H. Lundin* and *Frank P. Helsell,* for respondent.

PER CURIAM.—This is a proceeding to abate as a nuisance
the conducting of a house of prostitution in the city of Se-
attle, and to enforce against the property the penalties pre-
scribed by the statute.   The property in question is owned
by the appellant Kristine Humphrey.   It was leased to a
Japanese sometime in the year 1913 as a lodging house, who
conducted it as such until the early part of the year 1914,
when, with the consent and approval of the appellants, he
assigned the lease and turned possession of the property to
one Mabel Roberts.   Later on, Mabel Roberts, again with

[1]Reported in 162 Pac. 983.

the consent and approval of the appellants, reassigned the lease and delivered possession of the property to one Evelyn Reede. After the assignment by the Japanese, the house was conducted by the women named as a house of prostitution. In July and December, 1914, and again on January 16, 1915, the lessees and certain inmates of the building were arrested and fined under the criminal statutes for engaging in prostitution. After the final arrest in January, 1915, the inmates of the house abandoned it; Evelyn Reede, who then owned the furniture, selling it to one Joseph Haten for a stated consideration of $500.

This action was instituted on January 27, 1915, some eleven days after the final arrest. Between the dates of the arrests, the house was in charge of two elderly people who had taken up their residence in the house some time prior to January 16, 1915, and remained therein after that time at the request of Haten. Later on, the appellants repossessed themselves of the premises and again let it to a Japanese. Since the arrest in January, 1915, there is no showing in the record that the house was conducted as a house of prostitution. The appellants testified that it had not been so conducted, and testified, also, that they had no knowledge, prior to the time of the last arrest, that it had ever been so conducted. It appeared, however, that they resided at all times in a dwelling house situated within ninety feet of the building, and that it was common knowledge in the neighborhood that it was being so conducted, frequent complaints to that effect being made to the police. It appeared also that the appellant Jesse J. Humphrey collected the rents for the building monthly during the time it was occupied by the women named, going to the house for that purpose.

The trial court entered a decree granting a permanent injunction abating the nuisance, ordered the furniture in the building to be removed and sold, and assessed against the building and the grounds upon which it is situated and against the owners of the property a tax of $300. This ap-

peal raises the question whether the tax is legally assessed.

By § 946-2 of Remington's Code, it is provided:

"Whenever a nuisance exists, as defined in this act, the prosecuting attorney or any citizen of the county may maintain an action in equity in the name of the State of Washington upon the relation of such prosecuting attorney or citizen, to perpetually enjoin said nuisance, . . ."

By § 946-8, it is provided:

"Whenever a permanent injunction issues against any person for maintaining a nuisance as herein defined, or against any owner or agent of the building kept or used for the purposes prohibited by this act, there shall be assessed against said building and the ground upon which the same is located and against the person or persons maintaining said nuisance, and the owner or agent of said premises, a tax of three hundred dollars. . . ."

The trial court found from the evidence—and we think the finding justified—that the appellants knew of the use to which the lessees had put the premises long before the last arrest of the lessees in January, 1915. The evidence justifies the conclusion, also, that the appellants themselves made no effort to abate the nuisance or to put the premises to legitimate uses until after the commencement of the present action. But since the evidence fails to show that the premises were occupied by prostitutes or that acts of prostitution were practiced thereon subsequent to January 16, 1915, the appellants contend that the tax levied against the premises was unjustified. Attention is called to the fact that the language of the first section quoted is in the present tense—that the action may be begun "whenever a nuisance exists"—and it is argued that, since the nuisance ceased at the time of the last arrest, no nuisance existed at the time the action was begun some days later, and hence the action will not lie. But we think this contention not justified. The appellants themselves made no effort to abate the nuisance until after the commencement of the abatement action. The cause for abatement was the activity of the police officers. The appellants'

activity commenced on the commencement of the abatement action. Having shown a disposition to allow the law to be avoided, it is presumable that they would have continued to do so but for the abatement action. A temporary cessation from the unlawful practices is not enough. The state has the right to resort to all the remedies afforded to make the cessation perpetual. Since, therefore, the action was necessary to arouse the owners to activity, we think the court was justified in imposing the penalties the remedy afforded. Affirmed.