## No. 9118.

### GREGG *v.* THE PEOPLE.

1. CONSTITUTIONAL LAW—*Due Process of Law.* Statutes creating presumptions, shifting the burden of proof, or declaring what shall be *prima facie* evidence, are within the legislative competency. A statute declaring that general reputation shall be evidence of the character of the house as a house of ill fame is not an interference with the property right of the proprietors, without due process of law.

2. CRIMINAL LAW—*Bawdy House—Injunction.* Under c. 123 of the Acts of 1915 the owner of premises may be enjoined from permitting the use thereof as a brothel.

That the owner had nothing to do with the keeping of the house is immaterial. The purpose of the statute is to abate the nuisance by stripping it of its furniture, fixtures and equipment.

The owner may if he can establish his innocence.

3. —— *Parties.* The owner of the premises as well as keeper of the brothel, may be made defendant. The owner cannot complain if the tenant is not made party.

4. —— *Equity Jurisdiction.* The statute provides a civil action in aid of criminal process. The power of the legislature to so extend the jurisdiction of equity is well established. The defendant is not entitled to a trial by jury.

5. —— *Evidence.* The owner of the premises lived adjacent thereto, and collected rent from the keeper of the brothel. Held sufficient to establish his guilty knowledge and compliance.

*Error to Las Animas District Court, Hon. A. Watson McHendrie, Judge.*

Mr. EARL COOLEY, Mr. GEORGE BLICKHAHN, Mr. JOHN BETTS, for plaintiff in error.

Hon. LESLIE E. HUBBARD, Attorney General; Mr. BERTRAM B. BESHOAR, Assistant Attorney General, for The People.

Mr. Justice Garrigues delivered the opinion of the court.

Chapter 123, S. L. 1915, page 360, under which this action is brought, may be summarized as follows:

Sec. 2. The building, the ground upon which it is situated, together with the furniture, fixtures, musical instruments and contents, when used or resorted to as a public or private place of lewdness, assignation or prostitution, is deemed a nuisance, and may be restrained and prohibited in equity by injunction.

Sec. 3. Whenever there is reason to believe that such a house or place is kept or exists, the District Attorney must, in the name of the People, and any citizen may, maintain an action in equity to perpetually enjoin the keeper from maintaining the same, and the owner of the building from permitting such nuisance to be kept on his place, and to abate and prevent the nuisance.

Sec. 4. Whenever, in such an action, either by verified complaint or affidavit, the keeping of such a house is shown to the satisfaction of the court or judge, he shall allow a temporary writ of injunction to prevent its continuance or recurrence and to abate the nuisance.

Sec. 5. On the trial of the case evidence of the general reputation of the place, and of its habitues, is admissible for the purpose of proving the existence of the nuisance.

Sec. 6.   Any violation or disobedience of any injunction or order provided for by the act is punishable as a contempt of court.

Sec. 7.   If, on the trial, the existence of such a house or place is established by the evidence as provided by the act, the court must enter an order abating the nuisance directing the removal from the place or building, and sale as under execution, of all fixtures, furniture, musical instruments and movable property, used in keeping the place; also directing the effectual closing of the building or place against its future use for any purpose, and keeping it closed for one year, unless sooner released in the manner provided by the act, ad while the closing order remains in effect, the building or place shall remain in the custody of the court.

Sec. 8.   Section 8 provides how the proceeds from the sale shall be applied.

Sec. 9.   Section 9 provides if the owner of the building or place has not been guilty of contempt of court in the proceedings, and appears and pays all costs, fees and allowances (and these are made a lien on the building or place), and files a bond in the full value of the property, to be ascertained by the court, with sureties to be approved by the court or judge, conditioned that he will immediately abate any such nuisance existing at such building or place, and prevent such a house from being established or kept thereat, within a period of one year thereafter, the court or judge may, if satisfied of his good faith, order the closed premises to be redelivered to the owner, and the order cancelled so far as it relates to the owner of the building, but the release of the building shall not release it from any judgment, lien, penalty or liability to which it may be subject by law.

Sec. 10.   The act provides that any fine in the proceedings against the owner of the building for contempt of court, and the costs, fees, and allowances, shall be a lien upon the building or place, which may be enforced by special execution.

The complaint alleges that defendant below, James Gregg, is the owner of a building or place, describing it, used and resorted to as a public and private place of lewdness, assignation and prostitution, that such a place is kept and exists and that defendant is the keeper of the place. The complaint prays for a temporary writ of injunction, to be made perpetual on final hearing, to restrain the keeping of such a house, and for the abatement of the nuisance.

A temporary injunction was issued restraining defendant from keeping or permitting to be kept such a house or place in his building, which, on final hearing, was made perpetual.

Defendant was served with notice, and on the day set for hearing the case was tried to the court without a jury. Defendant appeared without counsel, and the court, after hearing the evidence, found that such a place or house was kept and existed as described in the complaint, and that defendant was the owner and keeper of the place or house, and was also the owner of the ground or building at which the place was kept, and entered a decretal order that the fixtures, furniture, musical instruments and movable property used in conducting and keeping the place be removed and sold under execution, and that the building be closed against its use for any purpose, and kept closed for one year unless sooner released as provided by law, and, until released, that it remain in the custody of the court; and taxed the costs against the defendant.

J. E. Kane, acting sheriff of the county for one and one-half years, testified in substance:

"The place has been used as a bawdy house, it has the general reputation of being a bawdy house—a sporting house. Gregg owns the place. Have had frequent complaints from that vicinity about the house.

J. W. Coe, deputy sheriff of the county, testified in substance:

"Was out to the place on the 3rd of July, J. M. Johns, a colored man, was in charge of the place. Saw quite a num-

ber of men and one woman in the building. Johns said his girls had all gone but one, and he hadn't had time to get out and get any more. The place has the general repu-tation of being a bawdy house—have heard so a dozen dif-ferent times or more. Gregg lives in an adjacent building 30 feet away from the main building."

Tobe Dennis, deputy sheriff, testified in substance:

"The place has the general reputation of being a bawdy house, have seen sporting women there at different times. Have had complaints about the place."

The record then shows that after the people rested, Gregg came forward and was sworn as a witness in his own be-half and stated to the court that he was without a lawyer. Whereupon, the court asked him what he had to say about the case, and he said in substance:

"That he owned the house or place, but had had it rented to Johns, a colored man, for about two years, at $30.00 a month, but that he didn't know what Johns was doing with it, and if it was being run as a bawdy house that he had no knowledge of that fact."

1. The fact that a building is used or resorted to as a public or private place of lewdness, assignation or prosti-tution embraces the definition of a bawdy house. There-fore, to sustain the judgment, it was necessary for the peo-ple to show, to the satisfaction of the court by a prepond-erance of the evidence, that such a house existed or was kept at the premises; that defendant was the owner of the premises, and that he knowingly permitted the place to be used and occupied for such purposes.

2. It is strenuously insisted that the evidence is not sufficient to support the allegation that the place was a bawdy house.

The reputation of a house is obtained through the charac-ter of the inmates and the class of people who resort there. Ordinarily the fact that a house is such a place cannot be proven by its general reputation alone, but may be proven by the character of the inmates and the class of peo-

ple resorting there.   But the statute changes this rule of evidence.   It provides that evidence of the general reputation of the place, or of its habitues, shall be admissible for the purpose of proving the keeping of such a place on the premises.

3.   It is claimed this statute is unconstitutional because it permits interference with plaintiff's property rights without due process of law.

Rules of procedure or of evidence, such as statutes creating certain presumptions, or shifting the burden of proof, or providing that certain facts shall constitute *prima facie* evidence, are under the control of the legislature and do not interfere with property rights without due process of law. It is simply one of the methods of proof prescribed by the legislature to show that such a house exists.   Therefore, the contention that the statute in this regard is unconstitutional cannot be sustained.

4.   It is insisted that the evidence does not show that defendant maintained, that is, that he kept the house.

By keeping a bawdy house is meant, primarily, governing it, and exercising control and direction over the house, and the conduct of its inmates.   There is no evidence that defendant kept this place, or that he leased the premises for such use.   Under the statute, however, the owner of premises may be enjoined from permitting their use for such purposes.   There is sufficient evidence that he owned and rented the premises to Johns who kept the place, and that defendant permitted it to be kept.

5.   If defendant had nothing to do with the keeping of the house further than knowledge that the place was being so used, and collected his rent, this made him interested in the keeping and brought him within the provisions of the statute as one who permitted such a place to be kept on his premises.   The purpose of the statute is to abate the nuisance by stripping the house of its furniture and fixtures and selling them at sheriff's sale to pay the costs, closing the house against all purposes for one year, and permanent-

ly enjoining the owner from permitting such future use of his premises.

6. The keeper of the house was not made a party and is not here complaining, and defendant, if he permitted the keeping, cannot complain to that portion of the injunctive order which relates to him as the owner of the premises, nether can he complain if he was the owner of the furniture, nor because Johns was not made a party.

7. The claim is made that the defendant did not permit such use of the premises, and had no knowledge of the unlawful keeping.

While there is nothing in the statute which provides that the want of such knowledge shall immune the owner from injunction, still it is generally held that statutes of this kind operate only against owners having knowledge, that is, knowingly permitting such unlawful use, and it is held to be competent for owners of such premises to prove their innocence.

8. It is also insisted that the statute is penal, therefore defendant was entitled to trial by jury.

Keeping a bawdy house is a statutory offense, and was a crime at common law. If this is a criminal action, defendant was entitled to trial by jury; but it is not a criminal action, it is a civil action in equity by injunction to restrain defendant from permitting the keeping of such a house on his premises, and to abate the nuisance. The equitable action is in aid of the criminal statute. Any one subject to prosecution under the criminal code for keeping a bawdy house, and any one permitting it to exist on his premises is subject to injunction under the civil action. Since the purpose of the statute is not the infliction of punishment against the offender, that being left to the criminal law, but the suppression of the unlawful keeping, the claim that keeping a bawdy house is a criminal offense under the statute makes no difference; therefore, there can be no successful assault upon the statute because it provides a civil action to enjoin the violation of a criminal statute.

The power of the legislature to thus extend the bounds of equity jurisdiction, as well as to prescribe the procedure, is well established.

9.   The injunctive features of the statute are broad with no designation of the parties who shall be made defendants. It may, therefore, be assumed that it was intended that the owner of the premises, as well as the keeper of the place, might be made parties.

10.   It is claimed that the statute is unconstitutional because it is an unwarranted exercise of the police power.

Similar legislation has been before the courts of last resort in other states, and it has been uniformly held that the legislature has the power to create a civil remedy in equity by injunction and contempt proceedings to prevent such an unlawful future use of premises.  In Iowa, under a statute, a permanent injunction was allowed to issue out of a court of chancery against the owner of premises to prevent the unlawful sale of intoxicating liquors thereon, and since then other states have passed similar statutes regarding the keeping or permitting the keeping of bawdy houses, and such statutes have universally been held constitutional, and not an unwarranted exercise of the police power.  See: *Martin v. Blattner,* 68 Iowa 286, 25 N. W. 131, 27 N. W. 244; *State v. Fanning,* 96 Neb. 123, 147 N. W. 215; *State v. Fanning,* 97 Neb. 224, 149 N. W. 413; *State v. New England Furniture & Carpet Co.,* 126 Minn. 78, 147 N. W. 951, 52 L. R. A. (N. S.) 932, Ann Cas. 1915D, 549; *State v. Ryder,* 126 Minn. 95, 147 N. W. 953; *State v. Grefig,* 164 Wis. 74, 159 N. W. 560; *People v. Smith,* 275 Ill. 256, 114 N. E. 31, L. R. A. 1917B, 1075; *State v. Humphrey,* 94 Wash. 599, 162 Pac. 983; *Moore v. State,* 107 Tex. 490, 181 S. W. 438.

11.   It is claimed the evidence is insufficient to warrant the conclusion that defendant knowingly permitted the keeping of the place on his premises.

The evidence shows that defendant lived in a house adjacent and only thirty feet away from the premises in ques-

tion.    Ignoring the rule that an owner is presumed to know the kind of business that is conducted on his premises, it is unreasonable to believe that defendant could reside so near, and collect his monthly rent, without knowing the kind of conduct that was carried on in the place.    In *State v. Humphrey,* 94 Wash. 600, defendants testified that they had no knowledge that there had been such conduct on their premises.    The court in answer to this said:

"It appeared, however, that they resided at all times in a dwelling house situated within ninety feet of the building, and that it was common knowledge in the neighborhood that it was being so conducted, frequent complaints to that effect being made to the police.    It appeared also that the appellant, Jesse J. Humphrey, collected the rents for the building monthly during the time it was occupied by the woman named, going to the house for that purpose."

We think the court was warranted in finding that defendant knew of the unlawful conduct carried on in his premises.    There is no evidence that he tried to stop it and was unable to do so, therefore, he permitted it to exist.

*Judgment affirmed.*

Decision *en banc.*