### HOLMES v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted October 13, 1920. Decided December 6, 1920.)

#### No. 3371.

**Nuisance ☞65—Guilty knowledge of owner of disorderly house essential to justify abatement.**

Act Feb. 7, 1914, to enjoin and abate disorderly houses, which declares such houses to be a nuisance and provides that evidence of general reputation is admissible to establish such nuisance, was not intended to subject owners or lessees to the provisions of that act, unless guilty knowledge was brought home to them, so that an injunction closing a hotel for a year must be reversed on the appeal of the owner, where the bill did not allege any facts showing his knowledge of the unlawful use.

Appeal from the Supreme Court of the District of Columbia.

Suit by the United States against James Ottoway Holmes and another to abate a nuisance. Decree for complainant, and said Holmes appeals. Reversed and remanded.

Alex. H. Bell, Percy H. Marshall, and F. J. Rice, all of Washington, D. C. (Bell, Marshall & Rice, of Washington, D. C., on the brief), for appellant.

J. E. Laskey, U. S. Atty., and L. Randolph Mason, Sp. Asst. U. S. Atty., both of Washington, D. C.

ROBB, Associate Justice. This is an appeal by the owner of a hotel building in this city from a decree in the Supreme Court of the District based upon the Act of February 7, 1914 (38 Stat. 280), "to enjoin and abate houses of lewdness, assignation and prostitution," appellant contending that the bill should have been dismissed as to him, because there was no averment that he had any knowledge, either actual or presumptive, of the alleged immoral acts.

The bill avers that Samuel Blackwell was the keeper of the hotel in question; that, while he "so used and occupied the said building, erection, or place, certain acts of lewdness and prostitution were conducted, permitted, carried on, and did exist in and upon the same, as will more fully hereinafter appear"; that Blackwell "did permit to use and occupy certain rooms of said building, erection, or place certain evil-disposed persons, and the said evil-disposed persons, on the days and at the times aforesaid, in said rooms, did commit acts of lewdness and prostitution"; that Holmes, the appellant, is the owner of the building "so used and occupied as aforesaid as a hotel by the defendant Samuel Blackwell." It is then averred that—

"On account of the acts and conditions hereinbefore set forth, said defendant Samuel Blackwell and said defendant James Ottoway Holmes are guilty

of a nuisance, and the said building, erection, or place is a nuisance, and the said furniture, fixtures, and other movable property used for the purpose aforesaid, in said building, erection, or place, are also a nuisance."

The prayers of the bill are for the issuance of an injunction pendente lite, a permanent injunction against each defendant for the suppression of the nuisance, the removal and sale of all the furniture, fixtures, and other movable property used in conducting the nuisance, and for an order closing the hotel for one year.

A motion to dismiss was interposed by Holmes, upon the ground that the bill states no cause for relief in equity, for the reason that the act of Congress upon which the bill is based is unconstitutional and void, because it provides for the taking of his property without compensation, for the alleged acts of another who was not and is not his agent and which acts "were committed without his knowledge, consent, privity, connivance, or control, and in respect whereof said defendant has omitted no legal duty nor committed any wrong." The sufficiency of the complaint as to him is challenged, because it is not therein alleged that he had any knowledge of or in any way participated in the acts complained of. The motion was overruled, a permanent injunction was issued, closing the premises for a year, and ordering the sale of the "fixtures, furniture, and other movable property" in the hotel, the proceeds to be applied to the payment of the costs.

The act in question provides that whoever shall own or occupy any building or place "used for the purpose of lewdness, assignation or prostitution in the District of Columbia is guilty of a nuisance," and the building or place in which such lewdness, assignation, or prostitution is conducted, permitted, or carried on, and the furniture, fixtures, musical instruments, and contents are also declared a nuisance. Section 2 provides that an action in equity may be maintained "to enjoin said nuisance, the person or persons conducting or maintaining the same, and the owner or agent of the building or ground upon which said nuisance exists"; that the court may issue a temporary injunction on affidavits, depositions, oral testimony, or otherwise after three days' notice in writing to the defendant. Section 3 provides that the action when brought "shall be triable at the first term of court, after due and timely service of the notice has been given, and in such action evidence of the general reputation of the place shall be admissible for the purpose of proving the existence of said nuisance." Section 4 provides for the summary trial and punishment of a violator of the injunction. Section 5 provides:

"That if the existence of the nuisance be established in an action as provided in this act, or in a criminal proceeding, an order of abatement shall be entered as a part of the judgment in the case, which order shall direct the removal from the building or place of all fixtures, furniture, musical instruments, or movable property used in conducting the nuisance, and shall direct the sale thereof in the manner provided for the sale of chattels under execution, and the effectual closing of the building or place against its use for any purpose, and so keeping it closed for a period of one year, unless sooner released."

Section 6 provides that the proceeds of sale shall be applied to the payment of costs; the balance, if any, to be paid the defendant. Sec-

tion 7 permits the owner to file an approved bond in the full value of the property that he will immediately abate the nuisance and prevent the same from being established or kept within a period of one year, and the court, if satisfied of his good faith, may cancel the order of abatement as to the property. If, in an equity action, the bond is filed before judgment and order of abatement, "the action shall be thereby abated as to said building only." Section 8 provides that upon the issuance of a permanent injunction against any person for maintaining such a nuisance as the act denounces, or against any owner or agent of the building kept or used for the prohibited purpose, there shall be assessed against the building and ground and against the person or persons maintaining the nuisance and the owner or agent of the premises, a tax of $300.

The bill in this case does not allege that Holmes either knew or had reason to know that "certain evil-disposed persons * * * did commit acts of lewdness and prostitution" in the hotel owned by him and leased to Blackwell, nor are any facts averred from which such an inference reasonably might be drawn. It is alleged merely that Blackwell kept the premises *as a hotel,* and that he permitted certain evil-disposed persons to occupy and use certain rooms therein, where acts of lewdness and prostitution were committed. It is not even alleged that Blackwell knew or had reason to know that these persons were evil-disposed, or that they sought accommodations at his hotel for the purpose of committing acts of lewdness and prostitution. Certainly there is nothing in the complaint that would charge Holmes with knowledge of what was going on. If the act in question is susceptible of such a construction, then every hotel and apartment house in Washington is liable to be closed for a year, if it is made to appear that sporadic acts of lewdness and prostitution occurred therein, although without the knowledge of either the owner or lessee. Such an interpretation ought not to be placed upon the act unless its language is susceptible of no other construction.

The purpose of the act, as set forth in its title, is "to enjoin and abate houses of lewdness, assignation and prostitution; to declare the same to be nuisances," etc. Having in mind that the keeping of a bawdyhouse is an indictable nuisance at common law (De Forest v. U. S., 11 App. D. C. 458), and that the intent of Congress, as expressed in the title to this act, was to abate houses of that character, let us briefly scrutinize the language employed to effectuate that intent. The first paragraph in effect declares that to be a nuisance which already was such, for the building or place must be "used *for the purpose* of lewdness, assignation, or prostitution" to constitute a nuisance, and under section 3 *"evidence of the general reputation of the place"* is admissible at the trial to prove the existence of the nuisance. Certainly those provisions are inconsistent with the view that Congress intended to subject a citizen to the provisions of the act, unless he possessed a guilty knowledge of the acts relied upon, or was fixed with presumptive knowledge because of the general reputation of the place. Under such an interpretation, the act is reasonable and free from constitutional infirmities. Hodge v. Muscatine County, 196 U. S. 276, 25 Sup.

Ct. 237, 49 L. Ed. 477; Marvin v. Trout, 199 U. S. 212, 26 Sup. Ct. 31, 50 L. Ed. 157.

In the Hodge Case a tax had been assessed upon the property and the owner thereof, where cigarettes. had been sold by the lessee in violation of law and without the knowledge of the owner. The court sustained the tax, "conceding that the landowner is entitled to notice before he can be personally liable, or before his property can be impressed with a lien." The court found that the owner had failed to take advantage of the provision of the law under which she might have raised the question she sought to raise in the Supreme Court. That court therefore declined to "determine whether the defense be a valid one, since, having opportunity to make it, she [appellant] declined so to do." In the Marvin Case the court sustained a statute of Ohio for the suppression of gambling, which made a judgment against those winning money a lien upon property owned by another and in which gambling was conducted with his knowledge and consent.

The so-called Red Light Abatement Act of California does not differ materially from the act under review. In Ex parte Selowsky, 38 Cal. App. 569, 177 Pac. 301, the District Court of Appeal of California (1918) said:

"We do not believe that it was intended by the Legislature that in all cases, regardless of the particular circumstances thereof, the judgment, to be valid, so far as its injunctive feature is concerned, should contain a direction that the personal property should be sold or that the building or place where the nuisance was maintained should be closed to all use or for any purpose for the period of one year. Cases under the act may arise which are not so flagrant in·the law's violation as in others. As, for instance, a building may be used by a tenant for the immoral purposes denounced by the statute without the knowledge of the owner thereof and in defiance of his wishes or sentiments regarding such a business. In such a case, it would, indeed, be manifestly unjust to deprive the owner of the building of its use for the period of a year for a lawful and decent purpose."

In Gregg v. People, 65 Colo. 390, 176 Pac. 483, the Supreme Court of Colorado (1918), in interpreting the Red Light Abatement Act of that state, which is substantially the same as ours, said:

"The fact that a building is used or resorted to as a public or private place of lewdness, assignation, or prostitution embraces the definition of a 'bawdy-house.' Therefore, to sustain the judgment, it was necessary for the people to show, to the satisfaction of the court, by a preponderance of the evidence, that such a house existed or was kept at the premises that the defendant was the owner of the premises, and that he knowingly permitted the place to be used and occupied for such purposes."

In State v. Fanning, 96 Neb. 123, 147 N. W. 215 (Nebraska, May 4, 1914), the court sustained a permanent injunction against the landowner because the granting of the temporary injunction was notice to him that "illegal practices were charged to be carried on in the building" and that he then should have taken steps to abate the nuisance.

In State v. Ross, 173 N. W. 66, decided by the Supreme Court of Iowa July 2, 1919, the court directed·attention to the provision in the statute making evidence of the general reputation of the place "competent, for the purpose of proving the existence of said nuisance" and

"prima facie evidence of such nuisance and of knowledge thereof, and of acquiescence· and participation therein on the part of the owner," and ruled that a case against the owner had been made under it.

In State v. Gilbert, 126 Minn. 95, 147 N. W. 953, 5 A. L. R. 1449, the Supreme Court of Minnesota interpreted a statute similar to ours as not applying to "any one not proved to be a participant, either active or by consent or acquiescence." See, also, Raymond v. Warden of City Prison, 82 Misc. Rep. 525, 143 N. Y. Supp. 912, Tenement House Department v. Whitney, 84 Misc. Rep. 54, 145 N. Y. Supp. 1011, and Tenement House Department v. McDevitt, 85 Misc. Rep. 429, 147 N. Y. Supp. 941 (affirmed in 165 App. Div. 367, 150 N. Y. Supp. 583), where the court refused to give effect to a provision in the New York Tenement Act (Consol. Laws, c. 61) imposing liability upon a landlord for acts committed without his knowledge, and which were beyond his power to control.

We conclude, therefore, that the intent of Congress, as expressed in the act under review, was "to enjoin and abate houses of lewdness, assignation and prostitution" as therein defined, but to subject owners or lessees to the provisions of the act only when guilty knowledge was brought home to them. Such an interpretation will fully effectuate the purposes of the act and at the same time accord the citizen due process of law. In other words, under this interpretation the guilty may not escape, nor the innocent suffer. The decree must be reversed, and the cause remanded, with directions to permit an amendment of the bill, if the complainant is so advised.

Reversed and remanded.