[Civ. No. 2136. Third Appellate District.—May 25, 1920.]

## THE PEOPLE, Respondent, v. FANNIE H. GODDARD, Appellant.

[1] RED-LIGHT ABATEMENT ACT — USE OF PREMISES FOR IMMORAL PURPOSES — CONTINUED EXISTENCE — REBUTTAL OF CODE PRESUMPTION.—In an action brought under the Red-light Abatement Act to abate a nuisance alleged to have been maintained in certain premises, the trial court having found, in accordance with the testimony of certain witnesses for the defendant, that the latter caused the persons who had been using the premises for immoral purposes to remove therefrom three days before the filing of the complaint in the action, and that at the time of the filing of the complaint there was no tenant or other person whatever occupying said premises, the presumption, declared by section 1963, subdivision 32, of the Code of Civil Procedure, "that a thing once proved to exist continues as long as is usual with things of that nature," if it

---

1. Abatement of bawdy-house as nuisance, note, **L. R. A.** 1918D, 819.

applies to the existence of such a nuisance, is dispelled or over-
come by other evidence.

[2] ID.—FINDING THAT PROPERTY IS NUISANCE—CONCLUSION OF LAW.
In such an action, the trial court having found that on and prior
to a certain date the property in question was used for the pur-
pose of lewdness, assignation, and prostitution, and that on a
subsequent date, which was prior to the filing of the complaint,
the owner caused the persons so occupying and using the same to
remove therefrom, a further finding that "the said upper story of
said building was and now is a nuisance under the laws of the
state of California," taken alone or by itself, is a conclusion of
law and does not involve a finding of fact.

[3] ID.—EVICTION OF TENANTS—FAILURE TO REMOVE FURNITURE IM-
MATERIAL.—In such an action, the trial court having found that
the owner, upon learning the use to which her property was being
put, caused the persons so occupying and using the same to remove
therefrom, its further finding that the furniture in said building
at and during the time the nuisance was being maintained therein
was not removed from said premises at the time those using them
for immoral purposes were compelled by the owner to vacate the
building, possesses no significance as proving the continued mainte-
nance of the nuisance.

[4] ID.—INCONSISTENT FINDINGS—REVERSAL OF JUDGMENT.—In such
an action, where there are irreconcilably inconsistent findings upon
a particular ultimate fact, such as the fact of the continued exist-
ence of the nuisance at the time of the commencement of the
action, a judgment or decree in favor of the people so predicated
cannot be upheld.

[5] ID.—GOOD FAITH OF OWNER IN EVICTING TENANTS—EVIDENCE—
UNSUPPORTED FINDING.—In this action brought under the Red-light
Abatement Act to abate a nuisance alleged to have been main-
tained in certain premises, the defendant having shown that imme-
diately upon learning through a newspaper article of the use to
which her premises were being put, she caused the females who
were conducting the premises for immoral purposes to be evicted
therefrom, and the prosecution having introduced no testimony
tending to show that the closing of the place by the owner was
not done in good faith, a finding that the act of the owner, in
evicting therefrom the parties who were using it for immoral pur-
poses, was not done in good faith for the purpose of permanently
abating said nuisance, is unsupported.

[6] ID.—ABATEMENT OF NUISANCE PRIOR TO SUIT—DISMISSAL OF AC-
TION.—Where a nuisance to abate which an action has been com-
menced has been abated or suppressed by the parties themselves
prior to the commencement of the action, the further prosecution
of the action cannot be maintained and the action should be
dismissed.

APPEAL from a judgment of the Superior Court of Sacramento County. C. O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

R. Platnauer for Appellant.

Hugh B. Bradford, District Attorney, for Respondent.

HART, J.—The action was brought under the Red-light Abatement Act to abate a nuisance alleged to have been maintained in premises in the city of Sacramento owned by the defendant. It was decreed that defendant be perpetually enjoined from conducting said premises ''for the purpose of acts of lewdness, assignation, and prostitution'' and the premises were ordered closed for the period of one year. Defendant appeals from the judgment.

The contention of appellant that the judgment is not sustained by the findings and that the evidence is insufficient to sustain the findings may be considered together.

The court found (finding III) : ''That on, and for a long time prior, to the 13th day of September, 1917, said real property herein described, together with the upper story of the building situate and erected thereon, was, during all of said time, used for the purpose of lewdness, assignation and prostitution, and the said upper story of said building was and now is a nuisance under the laws of the state of California. . . . V. That on or about the 17th day of September, 1917, said respondent was informed, through a newspaper, said premises were being used for immoral purposes, and she caused the persons so occupying the same to remove therefrom on September 25, 1917, but that the furniture in said premises still remained therein and had been in said premises for a period of nearly two years prior to the commencement of this action. That said complaint in this action was filed on the 28th day of September, 1917; that at the time of filing said complaint there was no tenant or other person whatsoever occupying said premises. VI. That the removal of the tenant from said premises was not made in good faith by said respondent for the purpose of permanently abating said nuisance.''

The evidence may briefly be summarized as follows: Edwin E. Grant, executive officer of the State Law Enforcement and Protective League, an organization formed for the purpose of aiding officers in the enforcement of the law, particularly the laws against commercialized vice, and S. C. Barker, an employee of said league, testified that on the evening of September 13, 1917, they visited the premises in question; that they saw three girls there who were dressed in loose-fitting house dresses and there were three or four drunken men lolling around; that beer was being served and witnesses bought some; that they asked two or three different girls "what their price was and in each case the girl answered one dollar and one-half a trick"; that Barker said: "We are interested in staying all night; what is your price for all night?" to which one of the girls answered, "Ten dollars," and further said, "Don't come back before 1 o'clock as we are busy right up until then." Witness Barker said that the word "trick" was "a polite term for sexual intercourse." Two police officers testified that the general reputation of the premises was that it was used as a house of prostitution.

A. E. Goddard, a son of the defendant, testified that he acted for his mother in connection with her property; that he read an article in the "Sacramento Union" of September 17, 1917, regarding an affidavit made by Grant to the effect that the property in question was used as a house of prostitution; that he immediately notified Mr. George Locke, the tenant of the property, to have the people vacate if it was used for purposes of that kind and that he visited the district attorney and told him that their instructions to their agent had been under no circumstances to rent the premises as a house of prostitution; that the people occupying the premises immediately moved out; that he visited the premises that evening and found only a Chinese caretaker there; that he saw Mr. Locke several times after that and that Mr. Locke assured him the place was closed. George Locke testified that immediately after Mr. Goddard called upon him he told the tenants to vacate and that they did vacate the premises before September 25, 1917. The witness owned the personal property on the premises and testified that, on the date of the trial, November 15, 1917, it was still there. A witness who had charge of the renting of the premises testified that they were occupied from September

7th until September 25th and that they became vacant on the latter date.

The people presented no testimony showing or tending to show, other than the inference which might be drawn from the testimony that acts of prostitution and lewdness were carried on in the building in question on and prior to the thirteenth day of September, 1917, that subsequent to the date just mentioned acts prohibited by the abatement act were committed in said building or that the building was used subsequent to said date for purposes of assignation or prostitution or that acts of lewdness were practiced therein. But it is the position of the people that, inasmuch as it would be practically impossible in most of such cases as the one here to show that acts of prostitution or of assignation or of lewdness were practiced in a building at the very instant that the complaint is filed, the presumption "that a thing once proved to exist continues as long as is usual with things of that nature" (subd. 32, sec. 1963, Code Civ. Proc.) applies, and that it was, therefore, not necessary to make affirmative or direct proof or for the court to find that at the time of the commencement of the action the immoral acts mentioned were carried on in the building. (See *People* v. *Macy,* 43 Cal. App. 479, [184 Pac. 1008].) The presumption referred to is a mere rule of evidence and will stand as evidence, where applicable, only where it is not overcome by other evidence, and, conceding that it applies in such a case as this or does not run counter to the presumption declared in subdivision 33 of section 1963 of the Code of Civil Procedure, to wit, "That the law has been obeyed," the answer to the contention is that there was introduced by the appellant testimony which appears to have been, in the judgment of the court, of sufficient probative power to overcome the force or effect of the presumption relied upon by the people. The uncontradicted testimony of the agent and the original lessee of the building is that they, having read on September 17, 1917, in the "Sacramento Union," a morning newspaper, of an affidavit filed with the district attorney of Sacramento county by the executive officer of the State Law Enforcement and Protective League, charging that the premises in question were being used for the immoral purposes prohibited by the Abatement Act, immediately proceeded to take steps looking to the closing of the place and that, on the

twenty-fifth day of September, 1917, they succeeded in causing, and did cause, the inmates of the building to be evicted and closed the place, and that from and after that date down to the date of the trial of this action, which was commenced on the fifteenth day of November, 1917, the building or the upper portion thereof complained of by the said executive officer had not been occupied or used for any purpose, except for the storing of the furniture used by the parties charged with conducting the premises in contravention of the mandates of the statute. [1] The trial court evidently believed the testimony of the witnesses, Goddard and Locke, the agent of the owner and the original lessee, respectively, of the building, for it found that the owner of the building, having been informed on the seventeenth day of September, 1917, that the upper story was being used for immoral purposes, caused the persons *so occupying* the same to remove therefrom on September 25, 1917, three days before the complaint invoking the injunctive power of the court against the building as a nuisance was filed, and that "at the time of the filing of said complaint there was no tenant or other person whatever occupying said premises." And it is upon this finding that we base the above declaration that the presumption "that a thing once found to exist continues as long as is usual with things of that nature," if it applies at all to the fact that a nuisance such as the one complained of here, which is itself a crime (Pen. Code, sec. 372), has been proved to have existed or to have been maintained at some time in the past, was dispelled or overcome by "other evidence." (Code Civ. Proc., sec. 1963.)

Of course, we are not to be understood as holding that in all cases brought under the Abatement Act it is necessary, to sustain the complaint, that immoral acts which constitute the nuisance under said statute must be directly or affirmatively shown to have been committed in the place down to the very time of the filing of the complaint. We simply hold here that there is a positive finding that, before the filing of the complaint, the place had been closed to immoral practices.

We are now brought to the consideration of the question whether the findings support the decree.

[2] As we have seen, the action was commenced by the filing of a complaint on the twenty-eighth day of September, 1917, and finding No. 3 is the only finding which contains

anything respecting the commission of acts of lewdness, etc., in and upon the premises. Said finding is:

"That on, and for a long time prior, to the thirteenth day of September, 1917, said real property herein described, together with the upper story of the building situate and erected thereon, was, during all of said time, used for the purpose of lewdness, assignation and prostitution, and the said upper story of said building was and now is a nuisance under the laws of the state of California."

On the other hand, as has been shown, the court found, in finding No. 5, that having been informed on the seventeenth day of September, 1917, that said premises were being used for immoral purposes, the owner caused the persons so occupying and using the same to remove therefrom on September 25, 1917, etc.

It is very clear that the finding that "the said upper story of said building was and now is a nuisance under the laws of the state of California," taken alone or by itself, is a conclusion of law and does not involve a finding of fact; but, if it were deemed necessary to concede that, in the connection in which it is employed, it might justly be held to constitute a finding of an ultimate fact, it is nevertheless plainly manifest that it is wholly inconsistent with finding No. 5. It is obvious that if, as the court found, the owner of the building, on receiving information that the upper story thereof was being used for immoral purposes, caused the persons so using it to be removed therefrom before the filing of the complaint herein, the nuisance complained of was abated by the act of the owner herself before legal proceedings against her and the building under the Abatement Act were instituted. This is at least necessarily and indeed, the only rational inference following from said finding.

[3] That portion of said finding that the furniture in said building at and during the time the nuisance was being maintained therein was not removed from said premises at the time those using them for immoral purposes were compelled by the owner to vacate the building possesses no significance. Neither the furniture nor the building itself constituted the nuisance complained of. It was the manner in which and the purpose for which both were used that constituted the nuisance, and if those using the furniture and the building for immoral purposes were evicted there-

from or from the upper story, where the nuisance was being maintained, was closed to those persons and all other persons desiring or intending to use them for the same purposes, how could the nuisance be further maintained? The answer to this question is too obvious to require further consideration of the proposition.

But we are still of the opinion that the alleged finding that the building "now is a nuisance" is a conclusion of law, notwithstanding the connection in which it is used. In the initial portion of the finding (and, as stated, said finding is the only one of the several findings which finds that acts of lewdness, etc., had been practiced on and in the premises), it is found that the upper story of the building was, not down to the filing of the complaint, but "on, and for a long time prior to, the thirteenth day of September, 1917, used for the purposes of lewdness, assignation and prostitution," etc. This finding does not support the conclusion or the finding, if such it might properly be called, that the place "now is a nuisance under the laws of the state of California."

[4] It follows that, in any view of the findings, the decree cannot stand: Where there are inconsistent findings upon a particular ultimate fact—that is, where the findings are irreconcilably inconsistent, as would be true here as between finding No. 5 and that portion of finding No. 3 to the effect that the building is now a nuisance, assuming that the latter is a finding of fact and not a conclusion of law— a judgment or decree, so predicated, cannot be upheld. It cannot in such case be determined upon which of the findings it was intended that the judgment should rest. The judgment may safely rest on one or the other, taken alone, if it be consistent with the finding, but it is very clear that it cannot rest on two findings in irreconcilable opposition to each other as to the same fact. And with the conclusion, stated as a finding, that the building "now is a nuisance," eliminated as a finding of fact, there is left no finding upon which the decree can rest.

[5] It is contended, however, that the finding that the act of the owner of the building in evicting therefrom the parties who were using it for immoral purposes was not done "in good faith for the purpose of permanently abating said nuisance," destroyed whatever force there may be in the

47 Cal. App.—47

finding, which we hold establishes or finds the fact that the nuisance had been abated by the owner prior to the filing of the complaint, that the females who were conducting the premises for immoral purposes were evicted therefrom as indicated in said finding. This contention would no doubt possess much force if there was any evidence to support the finding of want of good faith on the part of the owner in causing the female inmates of the building to vacate it. As seen, the only testimony presented by the people is to the effect that the building, or the upper story thereof, was used for immoral purposes on and prior to the thirteenth day of September, 1917. The testimony introduced by the defense (and it is not contradicted, so far as the face of the record discloses) is that the son and agent of the owner, upon learning of the complaint made against the building, immediately went to the office of the district attorney and stated to that officer that ''our instructions to our agent had been under no circumstances to rent it for a house of that kind; that I told him the people moved out immediately—we had ordered to have it vacated''; that he went to the premises after the order to vacate was made and that the women had all left the house, and that there was no one remaining in the upper story but a caretaker in the person of a male Chinese. He further testified that he met a police officer whose ''beat'' embraced the district in which the building is situated, and said to the officer ''that if there is anything like that going on, we had given instructions that the house be cleaned out, be closed, just as soon as they could get their things out of there. As I understand, Mr. Locke said it had been closed, because I went to see Mr. Locke several times after that, and he assured me the place was closed.'' The witness, Locke, for the defense, corroborated Goddard as to the instructions given to him by the latter that the building should not be used for immoral purposes and as to the eviction of the female inmates and the closing of the place as above indicated.

It would thus seem very clear that the owner and her agent acted in perfect good faith in causing the place to be vacated and closed to the immoral purposes for which it had previously been used. This proposition becomes the more clearly apparent from the fact that the people introduced no testimony tending to show that the closing up of the place

by the owner was not done in good faith—that is, that there
were any act or acts on the part of the owner or the agent
or lessee of the building to permit it to be reopened for use
for immoral purposes. The case of *State* v. *Jerome*, 80 Wash.
261, [141 Pac. 753], cited by the district attorney on the
question of good faith is not in point here. In that case the
female who had conducted a house of prostitution on the
premises there in question and another female prostitute
were still occupying the premises, not owned but under lease
by one of them, when the action to suppress the nuisance
was commenced, although there was no proof of actual acts
of prostitution having been practiced in the house from the
twenty-ninth day of June, 1913, when both women were
arrested for practicing acts of prostitution, and the thirtieth
day of June, 1913, when the complaint that the house was
being maintained as a nuisance by the women was filed.
Quite clearly, the fact that the women themselves remained
in the house after it was claimed that they had ceased carry-
ing on the business of prostitution therein constituted a cir-
cumstance from which the court could well draw the infer-
ence that immoral acts were still being committed in the
place subsequent to the time that it was claimed that the
nuisance was abated by the female inmates themselves. And
the court, in that case, with apparent justness, held that,
although some of the furniture had been removed from the
building and the conditions therein generally changed to
some extent, it was for the trial court to determine upon the
whole evidence whether the house in good faith had been
closed as one of prostitution, and refused to disturb the de-
cree authorizing the sale of the furniture and enjoining the
further use of the premises for any purpose for the period
of six months. It is hardly necessary to repeat that in this
case the women were all driven out of the place by the
owner of the building through her agents before the com-
plaint was filed, although, as seen, the furniture, which was
not the property of the owner of the building but belonged
to Locke, the original lessee, had not then been removed
therefrom.

The decree herein enjoins the use of the building for any
purpose for the period of one year, and it seems to us that
in a case of this character, where, as here, the question
whether so severe and drastic a penalty should be visited upon

the owner of real property turns upon the proposition of good faith—that is, whether the owner himself has in good faith abated the nuisance, with the intention that it shall remain abated for all time, before a complaint looking to the suppression of the nuisance theretofore maintained in and on the premises has been filed—a finding of want of good faith in such case should be supported by evidence clear, satisfactory, and convincing. The testimony presented by the people does not, in our opinion, make out such a case, while that of the defendant, as we have before said, appears to disclose perfect good faith in closing the place as it had been immorally maintained and an intention of permanently closing it as a house of assignation and prostitution or in which lewd conduct is practiced. The uncontradicted testimony of the owner's son, who was acting as the agent of the building, that he told a police patrolman of the particular district in the city in which the house is located that he desired that a stop should be put to any attempt to use the premises for immoral purposes is very strong evidence of the good faith of the owner in causing the building to be vacated by the women who had previously used it for purposes of prostitution and assignation, etc.

[6] It is, of course, well settled—indeed, it is but the statement of a rule necessarily following from the very logic of such a situation—that, where a nuisance to abate which an action has been commenced has been abated or suppressed by the parties themselves charged with maintaining the nuisance or otherwise prior to the commencement of the action the further prosecution of the action cannot be maintained and the action should be dismissed, for the very obvious reason that there is then nothing existing against or upon which the injunctive process of the court can or will operate. (Joyce on Nuisances, sec. 486, p. 704; 2 Wood on Nuisances, 3d ed., sec. 864; *McCarthy* v. *Gaston Ridge Mill Co.,* 144 Cal. 542, 547, [78 Pac. 7]; *Gilbert* v. *Peck,* 162 Cal. 54, 55, [Ann. Cas. 1913C, 1349, 121 Pac. 315].) And this rule, of course, applies as well to cases arising under the Red-light Abatement Act as in other cases of nuisances. (See *People* v. *Dillman,* 37 Cal. App. 415, [174 Pac. 951]; *People* v. *Burch,* 46 Cal. App. 391, [189 Pac. 716]; *State* v. *Jerome,* 80 Wash. 261, [141 Pac. 753].)

We conclude that the judgment should be reversed, but do not feel justified in ordering, as the counsel for the appellant requests us to do, the court below to enter judgment in favor of the appellant upon the findings as they appear in this record. Another trial might bring forth other and additional proof upon the question whether the nuisance was in good faith abated by the owner of the building, which would support a finding of want of good faith.

The judgment is reversed.

Burnett, J., and Nicol, P. J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1920, and the following opinion then rendered thereon:

THE COURT.—A majority of the justices not having assented to the granting of a hearing of the above-entitled cause in this court after decision by the district court of appeal of the third appellate district, it is deemed proper to say that the view of those opposed to the granting of such petition is that the district court of appeal opinion recognizes that a mere sham abatement of the nuisance prior to action would not be a defense, and that in so far as this feature of the case is concerned, the reversal was for want of evidence to sustain the finding of lack of good faith, and that upon the face of the opinion no error appears in this regard.

The application for a hearing stands denied.

Lawlor, J., and Olney, J., voted for a hearing in the supreme court.