## UNITED STATES v. MARGOLIS et al.

(District Court, S. D. California, S. D. April 26, 1923.)

No. G–51.

**Intoxicating liquors ☞263—Involuntary abandonment of nuisance will not bar abatement suit.**

'When maintenance of a nuisance, as defined in National Prohibition Act, tit. 2, § 21, is clearly shown, the fact that its maintenance had ceased before commencement or hearing of an abatement suit will not prevent issuance of an injunction, where its abandonment was not voluntary, but was due to seizure and removal of the liquor from the premises under a search warrant within 30 days before commencement of the suit and cancellation of the permit under which defendant obtained and kept the liquor.

In Equity. Suit by the United States against Harry Margolis and others. Decree for complainant

Jos. C. Burke, U. S. Atty., and Robt. Camarillo and Louis Lissner, Asst. U. S. Attys., all of Los Angeles, Cal.

McDonald & Thompson, both of Los Angeles, Cal., for defendant Margolis.

BLEDSOE, District Judge. This is an action brought under the provisions of title 2, §§ 21 to 23, inclusive, of the National Prohibition Act. Those sections provide substantially that any room, house, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of law, together with all intoxicating liquor and property kept and used in maintaining the same, is declared to be a common nuisance punishable by fine and imprisonment. Provision is made that, if a person has knowledge or reason to believe that his place or premises is occupied for the unlawful manufacture or sale of intoxicating liquor, and suffers the same to be so used or occupied, such premises shall be subject to a lien for, and may be sold to pay, all fines and costs assessed against the person guilty of such nuisance for such violation, and "any such lien may be enforced by action in any court having jurisdiction." Provision is also made for the bringing of an action in the name of the United States, in any court having jurisdiction to hear and determine equity cases, to enjoin any nuisance defined in the law. In section 22 it is recited that:

"It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no liquors shall be manufactured, sold, bartered, or stored" in or upon such premises or any part thereof.

Upon judgment of the court ordering such nuisance to be abated, the court may order that the property—

"shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used, if the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety to be approved by the court making the order in the penal and liquidated sum of not

less than $500 nor more than $1,000, payable to the United States, and conditioned that intoxicating liquors will not thereafter be manufactured, sold, bartered, kept or otherwise disposed of therein or thereon, and that he will pay all fines, costs, and damages that may be assessed for any violation of this title upon said property."

A further provision contained in section 23 is to the effect that any person who shall with intent to effect a sale of liquor—

"take or accept orders for the sale, shipment, or delivery of liquor in violation of this title is guilty of a nuisance and may be restrained by injunction, temporary and permanent, from doing or continuing to do any of said acts or things."

It is specifically provided that in such proceedings:

"It shall not be necessary to show any intention on the part of the accused to continue such violations if the action is brought within sixty days following any such violation of the law."

Pursuant to the foregoing provisions, a bill of complaint praying for an injunction and the abatement of the nuisance located on certain described premises in the city of Los Angeles, alleged to belong to and be under the control of defendant, was brought by the United States of America and prosecuted by the United States attorney for this district. Appropriate allegations with respect to the description of the property and the existence and maintenance of a nuisance thereon by the defendant were made, the specific charge being that the described premises—

"at all of the times herein mentioned have been and now are being used and maintained as a place where intoxicating liquor, as defined in section 1, title 2 of the said National Prohibition Act, has been, since said National Prohibition Act became effective, and now is, manufactured, sold, kept, and bartered in violation of the provisions of section 21, title 2, of the said National Prohibition Act" by the defendants, and "the said buildings and all intoxicating liquor and property kept and used in maintaining the same at all times herein mentioned were, have been and now are, a common and public nuisance as defined and declared by section 21, title 2, of the said National Prohibition Act, and that said nuisance at all times herein mentioned, was and now is, a continuing nuisance."

It is further alleged that the defendants and each of them, at all of the times therein mentioned, had knowledge and reason to believe that the said buildings and premises were, at all times therein mentioned, occupied and used for the unlawful manufacture and sale of intoxicating liquor. There is no specific allegation, in conformity to the language of section 21, that, in addition to such knowledge, defendants "suffered" the said premises to be so used. If the same shall be deemed necessary or advisable, plaintiff will be allowed to amend its complaint, to conform to the proofs adduced, to show that defendants, with the knowledge of the unlawful use to which the premises were being put, suffered the premises to be so used, etc. So, also, although the proofs amply justify a finding to that effect, the bill contains no positive allegation in the language of section 23, respecting the taking or accepting of orders by the defendants for the unlawful sale of intoxicating liquor. That there may be no question as to the propriety of an injunction based upon the provisions of that particular section and directed against defendant H. Margolis per-

sonally, plaintiff will be permitted to file an amendment to its bill in that particular behalf to conform to the proofs already in.

Specifically, with respect to the alleged unlawful use of the premises by the defendants as for the sale of intoxicating liquors, after alleging that the defendants and each of them kept for sale, sold, and bar-, tered, from and on said premises, intoxicating liquor for beverage purposes, seven separate sales, alleged to have been made by the defendants during the months of August, September, November, and December, 1922, are detailed and alleged in the bill. Allegations as to unlawful sales of liquor by the defendants to persons others than those specifically mentioned, whose names were to the complainant unknown, is also made, together with an allegation that, unless restrained and forbidden, the defendants and each of them will continue to use the property and premises in maintaining and using the same as and for a place where intoxicating liquor would be kept, sold, and bartered in violation of law and as a public nuisance.

The defendant H. Margolis appeared and by verified answer denied the existence, present or past, of a nuisance upon the premises; denied that the premises referred to were at the times mentioned in the complainant's bill, or are now being used as a place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of law by defendant answering or by any other person or persons; denied that the defendant answering, or any other person, at any of the times mentioned in complainant's bill, in violation of the National Prohibition Act, kept for sale or sold liquor for beverage purposes. Upon information and belief, defendant denied the making of the sales to any of the persons specifically mentioned in plaintiff's bill. As a special defense it was set up:

That the defendant at all times in the complaint mentioned has been and is now the rabbi of a certain congregation of the Orthodox Jewish faith, and as such rabbi the defendant was regularly appointed, and at all times up to and including the 4th day of December, 1922, had been, acting as rabbi of that certain congregation. That in pursuance of the accustomed practice of that religion as such rabbi, he did provide for the wine for the religious services of his congregation; that this was done under and pursuant to a permit issued to him by the Internal Revenue Department of the United States. Section 6, tit. 2, National Prohibition Act. That on the 4th day of December, 1922, "acting under a search warrant, previously issued, certain United States prohibition agents entered and searched all of the premises set forth and described in complainant's bill, and took from said premises all of the sacramental wine of defendant, and all intoxicating liquors thereon, including all containers, demijohns, bottles, funnels, corks, and all similar property used by the defendant in the storage or distribution of wine under his permit aforesaid, and that thereafter, and prior to the institution of this action, defendant's said permit to keep and dispense wine for sacramental purposes, as hereinbefore alleged, was, by officers of the United States government, revoked and canceled, and that since said 4th day of December, 1922, this defendant has not had upon said premises, or in his possession, intoxicating liquor in any form or quantity, either for his own personal use, or for the purpose of dispensing the same in connection with his religion."

Upon a hearing of the matter upon the merits, for the purpose of securing an injunction and an abatement of the nuisance, evidence was offered on behalf of the government showing a number of sales by the

defendant of intoxicating liquor for beverage purposes, acting in some instances alone and in other instances in conjunction with a son, from and upon the premises mentioned in the bill of complaint. No inquiry was made by him, or any one for him, as to whether the persons applying for the liquor and receiving the same were members of the congregation of which the defendant was rabbi. Seemingly, from the testimony, in order to effect a purchase of liquor from defendant, an introduction from some one in his confidence was all that was required. None of the government's witnesses were members of his congregation. As a matter of fact, most of the sales testified to by the witnesses for the government were made to parties who were not Jews, and in consequence, of course, not members of the defendant's or any other Jewish congregation. All in all, the evidence indicated very clearly to my mind that, with a ruthless disregard no less of the proprieties than of the law, and with a view to the deliberate prostituting of a high office and a noble religion, this defendant persistently engaged in the business of trafficking unlawfully in intoxicating liquor. The sales testified to by the witnesses for the government covered a period extending from the month of February, 1922, down to and including the 4th of December, the date upon which the search warrant referred to in the defendant's answer was served and executed. The defendant, for reasons best known to himself, did not offer any testimony upon the stand in denial of the sales alleged to have been made by him. In fact, through his counsel, he refused to make answer to any questions having to do with such matters and contented himself merely with the testimony of himself, members of his family, and one friend of the neighborhood, to the effect that no liquor had been kept upon the premises in question since the date of the service of the search warrant, December 4, 1922.

The bill of complaint hereinabove referred to was filed January 3, 1923, and thereupon, pursuant to the matters contained in it, a temporary injunction was issued. From the evidence introduced, it stands clearly within the realm of indispute that the defendant, in open and flagrant violation and disregard of the law, has been engaged in the business of selling liquor for beverage purposes from the premises referred to in the bill of complaint at least up until the very moment when, through the execution of a search warrant by officers of the government, his remaining stock of liquor, utensils, etc., was taken from him and placed in custody. Defendant contends, however, that no abatement or injunctive relief should now issue, because of the fact that since the 4th day of December, in consequence of the execution of the search warrant, he has been deprived of the liquor belonging to him; that he purchased no other, and therefore since that time has not made any sales of intoxicating liquor; that as a consequence the nuisance which this action was brought to abate had been actually abated, previously to the bringing of this action, by the seizure made by the officers of the government. In this behalf, People v. Goddard, 47 Cal. App. 730, 191 Pac. 1012 and Shore v. U. S. (C. C. A.) 282 Fed. 857, are cited. These cases hold that:

"Where a nuisance, to abate which an action has been commenced, has been abated or suppressed *by the parties themselves* * * * prior to the

commencement of the action, the further prosecution of the action cannot be maintained, and the action should be dismissed, for the very obvious reason that there is then nothing existing against or upon which the injunctive process of the court can or will operate." People v. Goddard, 47 Cal. App. 730, 191 Pac. 1016.

A rehearing of this decision was denied by the Supreme Court of California, that court saying, however (47 Cal. App. 741, 191 Pac. 1016) that a majority of the justices recognized that "a mere sham abatement of the nuisance prior to action would not be a defense." The case was reversed for a new trial upon the question of good faith.

The first authority cited in the Goddard Case in support of the declaration of law quoted is Joyce on Nuisances, § 486, p. 704. The language of that text is that "a nuisance will not, it is decided, be enjoined after it has been *voluntarily abated*." (Italics supplied.) The distinction between the instant case and those cited is not only patent, but potent. Here there was and is no voluntary abatement of any sort. The defendant, if left to his own devices and the admonitions or want of admonitions of his own conscience, would doubtless even yet be seeking to abuse the high privilege accorded to him and enrich himself by the unlawful vending of alcoholic liquors committed to his care for a special and lawful purpose. He is not selling liquors now from the premises occupied by him, first, because the government took away all his stock in trade; secondly, because, his permit being revoked, he could lawfully obtain no more liquor to sell; and, thirdly, because of the temporary injunction heretofore issued by this court. The abatement had, if one actually has been had (of which we have no evidence, save from him and his children), is due not to his own voluntary act, but solely to vis major. Under such circumstances, this court is not obliged to stultify itself, and because of an assumed change of heart on the part of the defendant and through a failure to take advantage of appropriate injunctive process, thereby actually pave the way for a further debauchery of the law in the guise and under the asserted protection of the practice of religion. Courts having to do with similar controversies, and similar bland and childlike defenses, have not hesitated to adopt a contrary course.

The Supreme Court of Iowa, in which jurisdiction they have an abatement law not dissimilar to the one under consideration, has had occasion several times to construe the law and apply it to situations similar to that involved herein. In Judge v. Kribs et al., 71 Iowa, 183, 184, 32 N. W. 324, 325, the court said:

"The several defendants were witnesses in their own behalf, and severally testified, with more or less directness, that they, after notice of the hearing for the allowance of a temporary injunction was served on them, had quit the business, and, as one of them stated, he had 'reformed.' * * * So here it appears from the evidence that the defendants were engaged in selling intoxicating liquors contrary to law, and kept and maintained a building for that purpose. Upon being advised that an effort was about to be made to vindicate the law, they suddenly reformed and quit the business. It appears to us that there is great reason to suppose such a reformation is not in good faith. There is also reason to believe it was adopted as a temporary expedient. The evidence, we think tends to so show, or, if not, this court does not feel disposed to accept the evidence of the

defendants that they have ceased the unlawful sale of intoxicating liquors as conclusive evidence of such fact. Much less do we feel disposed to do so as to the future. Having been engaged in violating the law, it is not by any means certain that they will not do so in the future. The disposition to do so clearly appears, and there are heavy doubts as to the good faith of the reformation."

The same court, in Tuttle v. Bunting, 147 Iowa, 153, 125 N. W. 844, in disposing of a similar contention based upon somewhat similar facts, said:

"Defendants complain of the decree of permanent injunction and also of the order for the abatement of the nuisance. [Certain cases adverted to by the respective parties are here cited by the court.] The distinction between these cases is that, in one class, the trial court was of the opinion that defendants had, in good faith, gone out of business, and did not intend to again re-engage in it at the place in question or at any other place; while, in the other class, although the defendants had ceased the business and professed reformation, the brief time elapsing after the reformation and before trial or other circumstances disclosed were deemed insufficient proof of such repentance as to secure defendants immunity from an injunctional order. The question, after all, is largely one of good faith. In other words, if defendants have, in good faith, parted with the property, have quit the unlawful business, and do not expect or intend to engage in the business of selling liquor unlawfully there is no occasion for the issuance of the injunction. If, on the other hand, there be doubt as to the defendants' good faith or a question about their repentance, the order will issue to assist in removing the temptation to return to old habits."

In Donnelly v. Smith, 128 Iowa, 257, 103 N. W. 776, the same court in a somewhat similar contingency said:

"Should we concede that, before the hearing for the writ, defendant had brought the conduct of his business into conformity with law, this could avail him nothing. One who has been engaged in the traffic in intoxicating liquors in open violation of law cannot avoid an injunction by simply making profession of a change of heart and a swift change in existing conditions. Common experience has led to the conclusion that in all such cases the effort to reform should be given substantial aid in the way of a temporary writ."

It is obvious, of course, that the same reason would apply and similar justification would exist for the issuance of a permanent writ, such as is here under consideration. In State v. Humphrey, 94 Wash. 599, 162 Pac. 983, the Supreme Court of Washington had under consideration a case arising under the red light abatement statutes of that state. The trial court had entered a decree granting a permanent injunction abating the nuisance, ordering the furniture in the building to be sold, and assessing a special statutory tax against the owners of the property. In July and December, 1914, and again on January 16, 1915, certain inmates of the building in question were arrested and fined under criminal statutes for engaging in prostitution. After the final arrest in January, 1915, the inmates of the house abandoned it. The action was instituted on January 27, 1915, some 11 days after the final arrest. Subsequent to the arrest above mentioned, there was no showing in the record that the house was conducted as a house of prostitution. The owners of the property testified that it had not been so conducted. In affirming the judgment, the Supreme Court said (94 Wash. 601, 162 Pac. 984):

"The trial court found from the evidence, and we think the finding justified, that the appellants knew of the use to which the lessees had put the premises long before the last arrest of the lessees in January, 1915. The evidence justifies the conclusion also that the appellants themselves made no effort to abate the nuisance, or to put the premises to legitimate uses, until after the commencement of the present action. But since the evidence fails to show that the premises were occupied by prostitutes, or that acts of prostitution were practiced thereon subsequent to January 16, 1915, the appellants contend that the tax levied against the premises was unjustified. Attention is called to the fact that the language of the first section quoted is in the present tense—that the action may be begun 'whenever a nuisance exists'—and it is argued that since the nuisance ceased at the time of the last arrest no nuisance existed at the time the action was begun some days later, and hence the action will not lie. But we think this contention not justified. The appellants themselves made no effort to abate the nuisance until after the commencement of the abatement action. The cause for abatement was the activity of the police officers. The appellants' activity commenced on the commencement of the abatement action. Having shown a disposition to allow the law to be avoided, it is presumable that they would have continued to do so but for the abatement action. A temporary cessation from the unlawful practices is not enough. The state has the right to resort to all the remedies afforded to make the cessation perpetual. Since, therefore, the action was necessary to arouse the owners to activity, we think the court was justified in imposing the penalties the remedy afforded."

It has long been the practice in the federal courts to issue injunctions against further infringement of a patent even though the defendant may asseverate that he no longer violates the patent right. In one case (Jenkins v. Greenwald, Fed. Cas. No. 7,270), in declining to refrain from issuing an injunction against further infringement, the court said:

"Complainant in such a case is not obliged to rest his interests on the mere asseveration of the party that he will not repeat the act of infringement. Having once been a wrongdoer, the law supposes the possibility of his being so again, and will impose the proper restraint to prevent the repetition of the wrongful act."

Goodyear v. Berry, Fed. Cas. No. 5,556, Rumford Chemical Works v. Vice, Fed. Cas. No. 12,136 and White v. Heath (C. C.) 10 Fed. 291, are in similar vein.

The case of Shore v. U. S. (C. C. A.) 282 Fed. 857, cited and relied upon by the defendant, says:

"If the transgressions have ceased before the bill is filed and before proceedings are instituted, *and if it appears that they will not be repeated*, injunctive relief will not be granted." (Italics supplied.)

No such appearances as are referred to in the above quotation exist in the present controversy. Defendant's contention, if acceptable in principle, would prevent the use of abatement proceedings in any case where a search warrant was employed. If the service of the search warrant and accompanying seizure of liquors itself serves to abate the nuisance and render a court of equity impotent in the premises, then, in every case where a search warrant is used, judicial abatement may not be had. It is the positive duty of the officer serving the warrant to take the property specified therein before the judge or commissioner issuing the same. U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 10496¼f. And since it generally requires a

search warrant to ascertain with positiveness the existence of the facts necessary to justify an abatement of the nuisance, if defendant's contention were adopted, it frequently would result that, by the employment of the only means available to ascertain the fact, the government would deprive itself of the opportunity of abating the existing nuisance. This would be such an unreasonable construction of the law, in my judgment, as to cause any court honestly disposed toward the enforcement of the law to refuse to adopt it.

It follows, therefore in my judgment, that, from the evidence presented as to the past conduct and persistent attitude of the defendant, ample reason exists for the conclusion that the injunctive power of the court is necessary, in order that the defendant may be compelled to obey a law which ordinarily, and in the absence of such restraining influence, he seems disposed, ruthlessly and persistently, to violate. The premises in question are occupied by the defendant with his wife and children, both as a residence and as a grocery and delicatessen store. To abate it now, in accordance with the extreme mandate of the law, would result in turning the defendant and his family out of house and home, and prevent him from following his usual vocation. Ordinarily such consideration would have no influence with the court, but it is the fact that the defendant is a foreigner, hardly able to speak the English language, and therefore perhaps not to be subjected to the rigorous treatment that otherwise would obtain.

Under the provisions of section 22 of title 2 of the National Prohibition Act, the court, in its discretion, may not employ the extreme remedy of abatement, but may permit the premises to be occupied or used on condition that the defendant gives a bond, etc., and on condition that he be enjoined. For the reasons above mentioned, I am disposed to employ the less stringent remedy. The records of the court, of which the court will take judicial notice, show that the defendant has been informed against as for a violation of the National Prohibition Law, upon the premises involved, no less than 12 different times. In respect to each of these he has given ample bond to secure his appearance. It is obvious that he can give additional bond to protect the government against probable misuse of the premises in question in the future. If he declines to give such bond, the full measure of abatement will be decreed.

In accordance then, with the suggestions made hereinabove, if it shall be so advised, the government is granted leave to file amendments to the bill of complaint in the respects above indicated, to conform to the proofs adduced hereat. Upon the filing of such amendments, a decree will be granted and entered by the court, finding all of the allegations of the complaint to be true, providing for a lien upon the property for all fines and costs which may be assessed against the defendant in conformity to the provisions of section 21, ordering that no liquor shall be manufactured, sold, bartered, or stored on the premises, or any part thereof, permitting the defendant and his family to occupy and use the premises, if the defendant shall give a bond with sufficient surety, to be approved by the court, in the penal and liquidated sum of $1,000, payable to the United States, and conditioned that intoxicating liquor will not thereafter be manufactured, sold,

bartered, kept, or otherwise disposed of therein or thereon, and that defendant will pay all fines, costs, and damages that may be assessed for any violation of the National Prohibition Law upon said property.

If defendant fails and neglects, for the period of 10 days after the date of the filing of this opinion, to execute and file with the clerk of this court the bond hereinabove provided for, the court will enter a decree providing for the abatement of the nuisance by a vacating of the property as provided by law. The decree will also enjoin the defendant permanently from taking or accepting orders, for the sale, shipment or delivery of liquor in violation of law. It will also contain a provision that the court retains jurisdiction of the defendant; this controversy, and the entire subject-matter thereof, to the end that, if circumstances shall hereafter arise to justify additional orders or restraints to be by the court prescribed, such action may be had and taken. It will also provide for the costs of this proceeding to be paid by the defendant, the same to constitute a lien upon the property described in the complaint.

Plaintiff's counsel will draw and present the appropriate decree.