## UNITED STATES v. DE NEEN et al.
### (MAYLING, Intervener).
#### No. 2755.

District Court, D. Montana, Billings Division.
June 21, 1933.

Wellington D. Rankin, U. S. Atty., of Helena, Mont.

H. C. Crippen and H. C. Crippen, Jr., both of Billings, Mont., for defendants.

PRAY, District Judge.

The foregoing suit was commenced August 20, 1932, and is for the abatement as a common nuisance of premises known as "The Willows," being an island in the Yellowstone river with buildings thereon, about one mile east of the city of Billings, Mont. At the time of trial J. C. Mayling intervened and alleged in his answer that he was the owner of the premises. The case was tried February 6 and 7, 1933. September 24, 1932, a fire destroyed the buildings standing on the premises described in the bill of complaint. Shortly thereafter Mayling erected buildings suitable for the same kind of business. The offenses against the National Prohibition Act (27 USCA) set forth in the bill were committed on July 27, 1932, and August 7, 1932, in the buildings that were burned; this bill was amended in open court in the presence of intervener Mayling and opposing counsel, and defendants De Neen and McMillan, so as to include a violation of like character committed on the same premises, "The Willows," in the new buildings on January 11, 1933; the description in the bill was also amended to include the words "as now constructed," which, as amended, reads as follows: "Those certain premises known as the Willow's Dance Hall and Road House, as now constructed, at Island east of Billings, situated on Lot 8, Sec. 26, and Lot 4, Sec. 27, Township 1 North, Range 26 East, in the County of Yellowstone, in the State and District of Montana."

The evidence disclosed that a nuisance had been maintained for several months on the premises above described, first in the old buildings and then in the new, at the same island and location, on the same premises, under the same name, calling for the same kind of patronage and exploiting the same illegal business.

It appears that the law was intended to cover such a nuisance, maintained, as it was, "upon said property," which would mean the place described in the bill of complaint, known as "The Willows"; and if continuously maintained over a period of time, in the court's opinion, it would make no difference whether one of the series of violations occurred in a building that was burned or in a new building erected on the same premises which were sought to be abated by the bill of complaint.

This small island a mile from town, accessible to automobiles, was used for the purpose of violating the law. The place was well known and well patronized by persons seeking an out of the way drinking resort, and for months it had the reputation of being a place where intoxicating liquor was sold. Whether a building was burned and another erected in its place seems to be of little moment; the

same business was carried on, and the premises described, that is to say the island described, was used for the maintenance of a common nuisance. It seems quite evident that Mayling was connected with, or had knowledge of, the business conducted there before the fire occurred, as the deed he filed for record was dated prior to the two violations alleged in the bill; his own conduct makes it clear that he was desirous of profiting by the reputation and patronage "The Willows" had gained without unnecessary delay. Furthermore, a lease was introduced in evidence by intervener dated May 20, 1932, between D. F. McMillan "by his agent J. C. Mayling, duly authorized to do business in his name and stead," as lessor, and E. L. Wright, of Billings, Mont., as lessee. The description is the same as in the bill of complaint; the lease to run from its date to May 20, 1933, at a rental of $1,200, rather a munificent sum for a small island in the river. Here again the name of Mayling appears in connection with "The Willows." Officers for the government testified that after diligent search they had never been able to locate E. L. Wright, the above-named lessee. It seems quite evident, therefore, that McMillan and Mayling had knowledge of what use was being made of the island both before and after the fire, whether they, or either of them, actually conducted the business or not, and that one, or both, received large returns from the enterprise.

Counsel on both sides state that they have been unable to find a case in point. Can it be said, under all the facts here, that the nuisance was abated when the buildings burned, and therefore a new bill should have been filed; such a course might have saved considerable time and labor. Whatever abatement or cessation of the nuisance may have occurred appears to have been wholly involuntary in so far as the defendants and intervener are concerned. However, the island was still there, and likewise "The Willows" and the buildings were speedily restored; the same reputation still clung to the place, and it was known that the resort would soon be in full operation, and it was; and an arrest followed for violation of this law before this suit came on for trial. Perhaps the new buildings have burned since this case was heard; would that mean that the nuisance is abated and that the danger of a recurrence of violations of the law are at an end—not under the evidence here. The island, the grounds, appear to have been especially adapted to the enterprise in question and constituted a very desirable adjunct to the business; it was all a part of the general plan to attract patronage to a convenient out-of-the-way place hidden by the willows. The fire did not abate the nuisance; it was not destroyed or suppressed, only retarded for a brief interval, as the evidence plainly shows.

Accordingly the material allegations of the complaint are found to be true as alleged, and the place therein described a common nuisance, and the usual decree will therefore be entered closing the said premises for the period of one year. Section 34, tit. 2, 27 USCA; U. S. v. Boynton (D. C.) 297 F. 261; Kennedy v. U. S. (C. C. A. 9) 4 F.(2d) 486, 487; Pilsen Products Co. et al. v. U. S. (C. C. A.) 2 F.(2d) 453, 454; Equity Rule 19 (28 USCA § 723); U. S. v. Margolis (D. C.) 289 F. 161; U. S. v. Carstens P. Co. et al. (D. C.) 49 F.(2d) 350; Fessler v. U. S. (C. C. A.) 39 F.(2d) 363.

### Application for Modification of Decree.

Again an effort has been made to reopen the island resort in Yellowstone county called "The Willows" where the liquor laws were repeatedly violated, and which was closed under abatement proceedings after a trial in court.

The proposed new tenants seem to think that because they would like to run the place in question and would agree to conform to the law that nothing further remains to be considered. When an application is made to modify a decree the question first to be determined is whether the applicant, the former operator or owner, has made a showing of diligence and good faith on his part as to the violations of law charged in the criminal case, not whether the proposed tenant promises to do differently; if it were solely a question of finding a promising tenant then a modification of the decree would amount to little less than a reward to the operator or owner for violating the law or permitting it to be violated on his premises, and the act passed by Congress for serious consideration and enforcement would become ineffective. The principal question therefore is not whether the proposed tenant promises well, but whether the persons responsible for the repeated violations of law on the premises, and in great expense caused the government in conducting both criminal and civil phases of the case, have shown by their application for modification of the decree such diligence and good faith as would entitle them to further hearing; in this instance they have not done so.

The interested parties are referred to the first decision herein.